UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

SMART COMMUNICATIONS HOLDING, INC.,

Chapter 11
Case No. 8:25-bk-09473-RCT

*Jointly Administered with*

SMART COMMUNICATIONS COLLIER, INC.,

Case No. 8:26-bk-00146-RCT

      Debtors.

_____/

**FIRST INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT
OF COMPENSATION AND REIMBURSEMENT OF EXPENSES
FOR AKERMAN LLP, AS SPECIAL LITIGATION COUNSEL TO
THE DEBTORS FOR THE PERIOD OF DECEMBER 16, 2025 TO APRIL 30, 2026**

**NOTICE OF APPLICATION FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES AND
OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

Akerman LLP, as special litigation counsel for the Debtors-in-Possession, ("Applicant") has filed an application for compensation in the amount of $913,510.00 and reimbursement of expenses in the amount of $4,000.35 (the "Application"). A copy of the Application may be viewed on the case docket or may be obtained by request to the Debtor's bankruptcy counsel, Eric D. Jacobs, Esq., at (813) 439-3100 or ejacobs@venable.com.

If you object to the Application, you must file an objection with the Clerk of Court at 801 N. Florida Avenue, Suite 555, Tampa, Florida 33602, within 21 days from the date of the proof of service below, plus an additional three days if this notice was served on any party by U.S. Mail.

If you file and serve an objection within the time permitted, the Court will either (1) notify you of a hearing date, or (2) consider the Application and approve or disapprove the Application without a hearing. If you do not file an objection within the time permitted, the Court will consider that you do not oppose the Application, and the Court will consider the Application without further notice or hearing.

**SUMMARY OF FIRST INTERIM APPLICATION FOR ALLOWANCE AND
PAYMENT OF COMPENSATION AND REIMBURSEMENT OF
EXPENSES FOR AKERMAN LLP, AS SPECIAL LITIGATION COUNSEL
TO THE DEBTORS FOR THE PERIOD OF DECEMBER 16, 2025 TO APRIL 30, 2026**

1. Name of Applicant:                                   Akerman LLP

2. Services Provided to:                                Debtors-in-Possession, Smart
                                                        Communications Holding, Inc. and Smart
                                                        Communications Collier, Inc.

3. Date of Retention:                                   February 18, 2026 [ECF No. 126]

4. Period for this Application:                         December 16, 2025 – April 30, 2026

5. Amount of Compensation Sought:                       $913,510.00[1]

6. Amount of Expense Reimbursement:                     $4,000.35

7. Amount of Original Retainer:                         N/A

8. Current Balance of Retainer Remaining:               N/A

9. Blended Hourly Rate for this Application:    $786.22              Cumulative: N/A

10. This is an:                                          _x_ interim        ____ final application

11. Disclosure of prior applications:                   N/A (First Application)

| Period Covered | Requested | | Awarded | | Paid | | Holdback |
|---|---|---|---|---|---|---|---|
| | Fees | Expenses | Fees | Expenses | Fees | Expenses | |
| N/A | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

---

[1] This amount includes a significant rate courtesy discount in the aggregate amount of $130,968.00, as more fully detailed on Exhibit "2A", not including courtesy discounts for certain services not billed. The aggregate amount of courtesy discounts associated with services not billed totals $3,761.55, as reflected on Exhibit "4".

86569684;11

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

SMART COMMUNICATIONS HOLDING, INC.,

SMART COMMUNICATIONS COLLIER, INC.,

Debtors.

_____/

Chapter 11
Case No. 8:25-bk-09473-RCT

*Jointly Administered with*
Case No. 8:26-bk-00146-RCT

**FIRST INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT
OF COMPENSATION AND REIMBURSEMENT OF EXPENSES
FOR AKERMAN LLP, AS SPECIAL LITIGATION COUNSEL TO
THE DEBTORS FOR THE PERIOD OF DECEMBER 16, 2025 TO APRIL 30, 2026**

Eyal Berger Esq., Dustin Hillsley, Esq., and the law firm of Akerman LLP (collectively, "Akerman" or the "Applicant"), as special litigation counsel to the above-captioned Debtors, Smart Communications Holding, Inc. ("Smart Holding") and Smart Communications Collier, Inc. ("Smart Collier" and together with Smart Holding, the "Debtors"), files their first interim fee application (the "Application")[2] seeking an award of compensation for services rendered and reimbursement of fees and expenses incurred for the period of December 16, 2025, to April 30, 2026 (the "Application Period").

The Applicant submits this Application, pursuant to Sections 327, 328, 330, and 503(b) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2016-1 (collectively, the "Guidelines"). In accordance with the Guidelines, the following exhibits are annexed to this

---

[2] As reflected on Exhibit "4", certain time entry narratives have been redacted to preserve attorney work product related to ongoing litigation with certain creditors of the Debtors' estates. Upon request by the Court or the Office of the United States Trustee, Applicant shall make available to the Court *in camera* and to the Office of the United States Trustee, an unredacted version.

86569684;11

Application:

Exhibit "1" – Fee Application Summary Chart

Exhibit "2-A" and "2-B" – Summary of Professional and Paraprofessional Time

Exhibit "3" – Summary and Breakdown of Requested Reimbursements of Expenses and Disbursements.

Exhibit "4" – The Applicant's complete time records, in chronological order, by activity code category, for the time period covered by this Application. The requested fees are itemized to the tenth of an hour.

Applicant seeks payment of compensation for services rendered in the sum of $913,510.00 or 1,161.90 hours billed, and reimbursement of expenses in the amount of $4,000.35 advanced by Applicant, for a total sum of $917,510.35.

Applicant expended a total of 1,161.90 hours during the Application Period, rendering necessary and beneficial legal services. Exhibit "2-A" contains a list of Applicant's professionals and paraprofessionals who have provided services during the Application Period. Exhibit "2-B" contains a summary of professional and paraprofessional time by activity code. Exhibit "3" contains a summary of the Applicant's total actual and necessary out-of-pocket expenses and disbursements, for which the Applicant seeks reimbursement in accordance with the Guidelines. The expenses and disbursement summarized in Exhibit "3" are those which Applicant typically would invoice to its non-bankruptcy clients. Exhibit "4" contains a daily description of the services rendered and the hours expended by the various attorneys and paraprofessionals of the Applicant who performed services in this case based on contemporaneous daily time records recorded in increments of tenths of an hour, maintained by the Applicant.

86569684;11

**CASE BACKGROUND**

On December 16, 2025 (the "SC Petition Date"), Smart Holding filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code and made elections to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended.

On January 8, 2026, Smart Holding filed an amended petition to remove the Subchapter V designation (Doc. No. 51).  On that same date, January 8, 2026, Smart Collier filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code (the "SCC Petition Date" and together with the SC Petition Date, the "Petition Date").  Then, on January 12, 2026, this Court entered an Order jointly administering the Debtors' Chapter 11 cases (the "Chapter 11 Case") (Doc. No. 61).  The Debtors are a top technology supplier to corrections facilities across the country.

Prior to the Petition Date, the founder of the Debtors, Jon Logan,[3] along with the Debtors and other affiliated entities, were involved in two state court lawsuits that ensued following the death of Jon Logan's father, James ("Jim") Logan, and the subsequent transfer of control of the Trust to Janice Logan as sole Trustee, to which Trust Jim purportedly transferred his stock in Smart Holding just prior to his death.  Following unsuccessful negotiations for an agreed buyout of Smart Holding stock from the Trust, the Trustee removed her son Jon Logan from being a beneficiary of his father's family trust and weaponized the Trust's ownership interest in furtherance of her $100 million plus buyout demand.  The cases are styled *Jonathan Logan, et al. v. Janice Logan, et al.*, pending in the 12th Judicial Circuit for Sarasota County, Florida (the "State Court"), bearing Case

---

[3] At the time of the litigation, Jonathan D. Logan ("Jon Logan") was the 50% owner of Smart Holding, with Janice Logan (the "Trustee"), as Trustee of the James Logan Family Trust, dated February 10, 2021 (the "Trust"), owning the remaining 50% of Smart Holding under the strictures of F.S. 607.1436. Jon Logan is the sole officer and sole director of Smart Holding. Smart Holding owns 100% of the membership interests of Smart Communications Holding, LLC, a Delaware limited liability company. Smart Communications Holding, LLC is the 100% owner of Smart Collier. Jon Logan is the sole officer and sole director of Smart Collier.

86569684;11

Nos. 2023-CA-1002 and 2023-CA-1280 (consolidated) (the "State Court Action").  While the Trustee asserted numerous ancillary claims against her son Jon Logan in an attempt to leverage a buyout price exceedingly more than the value of the Trust's shares, she ultimately sought to dissolve Smart Holding, which forced the company to make an election to purchase the shares in order to avoid liquidation.  As a result, the State Court Action boiled down to a valuation of the Trust's non-controlling interest in Smart Holding.  Following the October 2025 valuation trial and through the efforts of Applicant, the State Court ruled that the Trust was owed approximately $41 million, far less than what the Trustee demanded prior to and during three years of its aggressive litigation, in which it made countless threats and repeated attempts to remove Jon Logan from the Debtors.[4]  The valuation award is currently on appeal as it is still many multiples more than what Debtors' valuation expert has opined.[5]

The Debtors sought to engage Applicant as special counsel for the purpose of continuing to assist the Debtors through representation in the State Court Action, which included subsequent trial court proceedings following this Court's partial lifting of the automatic stay as well as the appeal, and to retain access to Applicant's institutional knowledge of the State Court Action gained through Applicant's prepetition representation (the "Purpose").  Through Applicant's retention, Applicant has successfully negated substantial claims arising from the State Court Action, including successfully limiting a $110 million claim to approximately $41 million and preserved the Debtors' appellate rights.  Applicant has also provided the Debtors' general counsel with certain support related to State Court Action issues that overlapped with the Debtors' preparation

---

[4] The Trustee demanded $100 million before litigation was initiated, approximately $130 million after a year of litigation, and asserted a claim for $110 million in connection with Smart Holding's prior bankruptcy after two years of litigation.  *See* Case No. 8:24-bk-07106, Proof of Claim No. 11-1.

[5] Debtors' valuation expert opined that the Trust's non-controlling interest in Smart Holding was worth between approximately $1.2 million and $7.1 million as of the August 2023 valuation date set by the State Court, which date is also subject to the pending appeal.

86569684;11

and opposition to the Trust's Motions to Dismiss and the Trust's multiple Motions for Relief (each, as defined herein).

## APPLICANT'S RETENTION

On February 18, 2026, the Court entered the *Order Granting Renewed Application to Employ Eyal Berger, Esq., Dustin Hillsley, Esq., and the Law Firm of Akerman LLP As Special Litigation Counsel to the Debtors-in-Possession in the State Court Action Effective As of December 16, 2025* (Doc. No. 126) (the "Retention Order"). The Retention Order provides, among other things, that the "Debtors are authorized to employ and retain Eyal Berger, Esq., Dustin Hillsley, Esq., and the Law Firm of Akerman LLP as its Special Litigation Counsel in the State Court Action pursuant to 11 U.S.C. § 327(e)."

## DESCRIPTION OF SERVICES

As set forth in the Exhibits to this Application, the Applicant has organized its time records by task code in accordance with the Guidelines. The majority of the Applicant's time and effort was directed towards issues raised in the State Court Action.

Applicant expended a total of 1,161.90 hours and is requesting the total sum of $913,510.00 for the services rendered.

**State Court Action (B330)**

Applicant prepared for and presented at the initial December 19, 2025 preliminary hearing before this Court, including numerous conferences with bankruptcy counsel and related legal research on state law issues and due process. Applicant also prepared for and presented at the January 12, 2026, evidentiary hearing in the State Court Action which followed this Court's lifting of the automatic stay, including preparing direct and cross examinations, participating in numerous conferences with bankruptcy counsel prior to the hearing, conducting extensive legal research on

7

86569684;11

various issues including receivership authority, preparing for oral argument, drafting a proposed purchase order and final judgment, and conducting several witness preparation sessions. In addition, Applicant reviewed and responded to a motion regarding confidentiality of the pre-trial brief, including drafting proposed orders on confidentiality.

Following the January 12, 2026 hearing and the entry of the *Final Judgment Phase 2* (D.I. 2333) and the *Proposed Purchase Order* (D.I. 2332), on February 5, 2026, Applicant conducted legal research on several issues and prepared and filed motions for rehearing in State Court, including:

- *Motion for Rehearing on Valuation* (D.I. 2335), which challenged the valuation methodology;

- *Motion for Rehearing Regarding Payment Terms and Security* (D.I. 2336), which addressed interest and collateral issues;

- *Motion for Rehearing on Entitlement to Fees and Costs and Indemnification* (D.I. 2337), which raised issues regarding fees and costs;

- *Motion to Amend Final Judgment to Address Finality* (D.I. 2338), which sought severance of certain non-final elements to ensure appellate finality;

- *Smart Parties' Omnibus Response to Janice's Memorandum re Attorney Fees* (D.I. 2288);

- *Memorandum on Lack of Authority to Appoint a Receiver* (D.I. 2289);

- *Response to Alexis' Motion for Attorneys' Fees and Costs* (D.I. 2296); and

- *Supplemental Memo in Opposition to Alexis' Motion for Fees* (D.I. 2311).

Following the *Order Resolving Motions for Rehearing* (D.I. 2361) entered on April 6, 2026, which denied all motions for rehearing, Applicant conducted extensive appellate work. This

8

86569684;11

work included developing a master appeal outline systematically incorporating trial record evidence from Part 1 Phase 2 and Part 2 Phase 2, reviewing prior briefing, legal authority, and integrating record testimony and exhibits.  In addition, as it relates to the Debtors, Applicant prepared and filed the *Notice of Appeal to the Second District Court of Appeal* (D.I. 2370), drafted and filed a motion regarding finality of judgment for appellate jurisdiction, and obtained orders regarding case administration.

Finally, Applicant drafted requests for production directed to Janice and Alexis Logan regarding their claims for attorneys' fees and costs, prepared for and participated in meet-and-confers with opposing counsel, and analyzed potential additional requests for production based on potential litigation funding issues.  Applicant also prepared a detailed memorandum regarding payment terms and security, which included extensive analysis of insolvency protections, installment payment structures, and opposition to the Trust's proposed covenants.  Applicant also conducted research regarding the "fair value" of shares under dissolution statutes and drafted and filed a cross-motion for attorney fees on behalf of the Debtors and conducted research regarding the impact of fee arrangements.

Applicant also drafted and filed letters and status reports in the State Court Action advising on case status, filed notices of filing of bankruptcy hearing transcripts and orders, responded to various court orders, and filed the *Notice of Filing Order Modifying the Automatic Stay*.

In sum, for this task code, Applicant prepared for and presented at evidentiary hearings in the State Court Action, including witness examinations and oral arguments, and filed multiple post-judgment motions for rehearing challenging valuation, payment terms, fees, and appellate finality.  Following the denial of those motions, Applicant conducted extensive appellate work, including developing a master appeal outline, filing notices of appeal, drafting a motion on

86569684;11

appellate finality and jurisdiction, conducting fair value research, and drafting discovery requests related to attorneys' fees and potential litigation funding issues.  As a result of Applicant's services all appeal issues have been fully preserved for the Debtors' estates and the Debtors have the legal ability to further reduce the asserted claims by the Trust.

Applicant expended a total of 904.60 hours in this category and is requesting the total sum of $697,154.85 for the services rendered for this category.

**Claims Related to State Court Action (B340)**

Applicant spent significant time responding to the Trust's *Motion for Relief from Stay to Allow the State Court to Enter the Proposed Purchase Order as Final* (Doc. No. 172) (the "Motion for Relief").  This work included reviewing related court filings, preparing for and participating in numerous conference calls with bankruptcy counsel, including assisting Debtors' general counsel with drafting portions of the response brief to the Motion for Relief, researching finality under Florida state law, and attending the hearing on the Motion for Relief, and conducting research regarding the recoverability of certain fees and expert witness costs.

Applicant prepared and participated in meet-and-confers regarding fees, and met and conferred regarding a global settlement.  Applicant filed a response addressing the Trust's attempt to use an amended expense summary, disputing certain setoff amounts including reimbursements and damage claims.

Applicant also drafted and filed a status report in the State Court Action advising on the status of the Motion for Relief and drafted a status report regarding the Bankruptcy Court's decision on the Motion for Relief.  Applicant reviewed and analyzed all proofs of claim filed in the Bankruptcy Court by the State Court Action parties and considered and conducted research

10

86569684;11

regarding Debtors' proposed claim objections, including potential objections to claims related to approval of affiliate transactions.

As a result of Applicant's work, the Debtors are in position to prosecute all objections to claims that relate to or concern the State Court Action.

Applicant expended a total of 106.90 hours in this category and is requesting the total sum of $88,559.60 for the services rendered for this category.

**Bankruptcy Relief Related to State Court Action (B350)**

Applicant prepared for the hearing on the Trust's motion to dismiss the Chapter 11 case (the "Motion to Dismiss") and prepared for and attended multiple hearings on multiple Motions for Relief filed by the Trust, and prepared for and attended multiple conferences regarding both hearings. Applicant assisted general bankruptcy counsel and the Debtors with identifying specific State Court Action issues to support Debtors' opposition to the Motions to Dismiss and the Motions for Relief from Stay.  Applicant prepared certain portions of the memorandum of law in response to the initial Motion for Relief and prepared the memorandum of law in opposition to the second Motion for Relief, and drafted various portions of the oral argument for general bankruptcy related to issues in the State Court Action in preparation for the hearing on the Motion for Relief.  Following the hearing, Applicant revised the proposed order denying the Motion for Relief and extensively corresponded with bankruptcy counsel regarding same.  Applicant also assisted the Debtors' general bankruptcy counsel with preparing a motion regarding extension of the Debtors' exclusivity period as it related to state court issues.  As a result of Applicant's efforts the Motions to Dismiss were ultimately withdrawn, the initial Motion for Stay Relief was partially denied, and the second Motion for Stay Relief was entirely denied saving the Debtors' estates substantial legal fees and costs associated with the relief asserted against the Debtors.  Moreover,

86569684;11

the Debtors' motion for extension of exclusivity was granted giving the Debtors additional time to negotiate a consensual plan.

In addition to assisting with preparing oppositions to the Trust's motions, Applicant also assisted the Debtors with the identification, interview, and engagement of independent director candidates to approve affiliate transactions related to transactions disputed in the State Court Action, including preparing the application to retain the selected independent director and revising his engagement agreement. Additionally, Applicant analyzed the Debtors' intellectual property portfolio used in operations, reviewed existing customer contracts, and provided advice regarding legal issues associated with a new license agreement and resolution of IP ownership disputes between the Debtors and Debtors' affiliates as identified in the State Court Action.

Applicant expended a total of 150.40 hours in this category and is requesting the total sum of $127,795.20 for the services rendered for this category.

## EVALUATION OF SERVICES RENDERED

The Application has presented the nature and extent of the professional services rendered by Applicant for which compensation is sought. The recitals set forth in the daily time entries attached hereto constitute only a summary of the time spent. A mere reading of the time summary annexed hereto alone cannot completely reflect the full range of services the Applicant rendered and the complexity of the issues and the pressures of time and performance which have been placed on the Applicant in connection with these cases.

*American Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp.)*, 544 F.2d 1291 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977), enumerates the factors a bankruptcy court should evaluate in awarding fees. They are addressed as relevant to this matter below. Applicant believes that the requested fees are fair and reasonable considering the factors enumerated in *Johnson v.*

12

*Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), made applicable to bankruptcy proceedings by *First Colonial.*

**1.      Time and Labor Required**

The foregoing summary, together with the Exhibits attached hereto, detail the time, nature and extent of the professional services Applicant rendered during the period covered by this Application.  The hours expended evidence the extensive time devoted to this matter by Applicant with respect to various legal issues which have arisen in this case during the period covered by this Application.

**2.      Novelty and Difficulty of the Service**

The legal questions arising in the representation of the Debtors in regards to the State Court Action issues are not extremely novel or difficult, but they did require the exercise of skillful application of Bankruptcy Code provisions and Florida state law relating to the claims asserted against the Debtors' estates.

**3.      Skill Requisite to Perform the Services Properly**

In order to perform the legal services enumerated herein properly, substantive legal knowledge in the fields of bankruptcy, commercial law, corporate law, intellectual property law, appellate law, and debtor/creditor rights was required.  Applicant has extensive experience in these areas and is highly qualified to serve as special litigation and transactional counsel to the Debtors.

**4.      Preclusion of Other Employment By the Professional Due to the Acceptance of the Case**

Applicant is aware of no other specific employment which was precluded as a result of its accepting these cases.  However, the efforts of Applicant were devoted to these cases and Applicant was unable to devote that time to other matters, therein preventing Applicant from billing and collecting fees in other cases.

13

**5.      Customary Fee**

The rates charged by Applicant as set forth in Exhibit 2A are customary for attorneys within the Middle District of Florida of similar skill and reputation, and as explained herein, have already been discounted in addition to a global courtesy discount.

For services of the type rendered herein where those services were performed for a private client, Applicant would charge a reasonable fee for services rendered, on an hourly rate or, in addition, a contingent or fixed fee basis. The fees requested by Applicant are comparable to those fees which would be charged to a private client for similar services rendered by Applicant.

The rates charged by the participating attorneys and paraprofessionals, as set forth in the Exhibits are well within the range charged by attorneys in the Middle District of Florida of similar skill and reputation in the area of bankruptcy and commercial law. Furthermore, there is no agreement between Applicant and any other person for sharing compensation which may be awarded in this case.

**6.      Whether Fee is Fixed or Contingent**

Applicant's compensation is not fixed, as it is subject to the sufficiency of the estate to compensate Applicant for its services. It is not contingent in the classic sense whereby compensation will only be given if Applicant is successful in recovering money for general unsecured creditors; however, it is contingent in the sense that it is subject to the availability of unencumbered funds and this Court's approval.

14

86569684;11

**7.      Time Limitations Imposed By the Client or Other Circumstances**

Applicant has worked diligently to meet the deadlines imposed by the Bankruptcy Code and this Court as well as the trial deadlines imposed by court in the State Court Action, and has acted quickly and efficiently in the administration of the pending litigation.

**8.      Experience, Reputation and Ability of Applicant**

Applicant is an established law firm having substantial experience in bankruptcy and commercial law, litigation, corporate governance, intellectual property law, appellate law, real estate matters, and debtor/creditor rights.  Applicant is familiar with the issues arising during the pendency of this action, and has dealt with similar legal questions in the past.  Applicant has substantial experience in bankruptcy and commercial law, litigation, corporate governance, intellectual property law, appellate law, real estate matters, and debtor/creditor rights, considerable institutional knowledge as to various claims and issues asserted in the State Court Action, as well as its procedural history, that will significantly aid the Debtors in resolving any contested matters related to the State Court Action.

**9.      The Undesirability of the Case**

Applicant did not and does not find it undesirable to represent Debtors.

**10.     Nature and Length of the Professional Relationship with the Client**

Applicant commenced representing the Debtors in these Bankruptcy Cases on December 16, 2025.  Prior to these Bankruptcy Cases, Applicant has been representing the Debtors since approximately May 2024.

**11.     Awards in Similar Cases**

The amount requested by Applicant is not unreasonable in terms of awards in cases of like magnitude and complexity.  The fees required by Applicant comport with the mandate of the

86569684;11

Bankruptcy Code, which directs that services be evaluated in the light of comparable services performed in bankruptcy cases in the community.

## 12.     Benefit to the Estate

Applicant provided a benefit to these bankruptcy estates by, *inter alia*: (i) limiting the scope of the Trust's initial Motion for Relief; (ii) assisting with successfully opposing the Trust's second Motion for Relief; (iii) preparing for the defense and ultimately assisting in the withdrawal of the Trust's Motions to Dismiss; (iv) successfully arguing to preserve insolvency protections under Florida state law; (v) assisting the Debtors' general bankruptcy counsel with the Court granting an extension of the Debtors' exclusivity period; (vi) properly and timely perfecting the appeal of the valuation judgment; (vii) filing a cross-motion for attorney fees on behalf of Debtors; (viii) developing appellate strategy and timely filing notices of appeal; (ix) successfully negating substantial claims arising from the State Court Action, including limiting a $110 million claim to approximately $41 million; and (x) filing various other necessary notices and memoranda.

Based on the standards set forth in Section 330 of the Bankruptcy Code and *First Colonial,* the Applicant believes that it is entitled to receive the fair and reasonable value of the services it rendered during the period covered by this Application. Consistent with the Debtors' filings in these Chapter 11 cases and the payment of the Debtors' pre-petition fees to Applicant, these services and any fees awarded to Applicant may be paid by Smart Communications Collier, Inc., subject to approval by this Court.

**WHEREFORE**, the Applicant respectfully requests the Court to enter an order (i) awarding the sum of $913,510.00 as compensation for services rendered, and $4,000.35 as reimbursement for actual and necessary expenses incurred during the course of the Applicant's representation of the Debtors during the Application Period; (ii) authorizing and directing the Debtors to pay the Applicant the fees and expenses awarded herein; (iii) authorizing and approving

16

86569684;11

Akerman to draw the approved fees and expenses; and (iv) granting Applicant for such other relief as this Court deems just and appropriate.

Dated:  May 22, 2026.    Respectfully submitted,

**VENABLE LLP**
*Attorneys for Smart Communications Holding, Inc.*
*  and Smart Communications Collier, Inc.*
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Telephone: (813) 439-3100

By:  */s/ Eric D. Jacobs*
     Eric D. Jacobs, Esq.
     Florida Bar No. 85992
     Email: ejacobs@venable.com

- and -

By: */s/ Eyal Berger*
Eyal Berger, Esq.
Florida Bar Number:  0011069
Email: eyal.berger@akerman.com
Dustin Hillsley, Esq.
Florida Bar Number:  1018586
Email: dustin.hillsley@akerman.com
**AKERMAN LLP**
201 East Las Olas Blvd., Suite 1800
Fort Lauderdale, FL  33301
Tel: (954) 463-2700 /Fax: (954) 463-2224

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 22, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

By:  */s/ Eric D. Jacobs*
     Eric D. Jacobs, Esq.

86569684;11

## CERTIFICATION

1.    I have been designated by Akerman LLP ("Applicant") as the professional with responsibility in this case for compliance with Local Rule 2016-1(c) ("Local Rule 2016-1(c)").

2.    I have read the *First Interim Application for Allowance and Payment of (I) Compensation and (II) Reimbursement of Expenses for Akerman LLP, as Special Litigation Counsel to the Debtors for the Period of December 16, 2025 to April 30, 2026* (the "Application").  The Application complies with Local Rule 2016-1(c), and the fees and expenses sought fall within the Local Rule 2016-1(c), except as specifically noted in this certification and described in the Application.

3.    The fees and expenses sought are billed at rates and in accordance with practices customarily employed by Applicant and generally accepted by Applicant's clients.

4.    In seeking reimbursement for the expenditures described on Exhibit "3" Akerman is seeking reimbursement only for the actual expenditure and has not marked-up the actual cost to provide a profit or to recover the amortized cost of investment in staff time or equipment or capital outlay, except to the extent that the Akerman has elected to charge for in-house photocopies and outgoing facsimile transmissions at the maximum rates permitted by the Local Rule 2016-1(c).

5.    In seeking reimbursement for any service provided by a third party, Akerman is seeking reimbursement only for the amount actually paid by the Applicant to such third party.

6.    The following are the variances with the provisions of the Local Rule 2016-1(c), the date of each Court Order approving the variance, and the justification for the variance: NONE.

Dated:  May 22, 2026.

By:  /s/ *Eyal Berger*
Eyal Berger, Esq.
Florida Bar Number:  0011069
Email: eyal.berger@akerman.com
Dustin Hillsley, Esq.
Florida Bar Number:  1018586
Email: dustin.hillsley@akerman.com
**AKERMAN LLP**
201 East Las Olas Blvd., Suite 1800
Fort Lauderdale, FL  33301
Tel: (954) 463-2700 /Fax: (954) 463-2224
*Special Litigation Counsel to the Debtors*

18

86569684;11