UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

SMART COMMUNICATIONS HOLDING, INC.,

SMART COMMUNICATIONS COLLIER, INC.,

Debtors.

_____/

Chapter 11
Case No. 8:25-bk-09473-RCT

*Jointly Administered with*
Case No. 8:26-bk-00146-RCT

**DEBTORS' RESPONSE IN OPPOSITION TO
JANICE LOGAN'S MOTION FOR DERIVATIVE STANDING**

Smart Communications Holding, Inc. ("Smart Holding") and Smart Communications Collier, Inc. ("Smart Collier", together with Smart Holding, the "Debtors"), by and through undersigned counsel, hereby file their *Response in Opposition* (the "Response") to *Janice Logan's Motion for Derivative Standing* [ECF No. 288] (the "Standing Motion") filed by Janice Logan ("Janice" or "Trustee"), as Trustee of the James Logan Family Trust, dated February 10, 2021 (the "Trust"). In support thereof, the Debtors state as follows:

I.    **Introduction**

Contrary to the bald allegations in the Standing Motion, the Debtors are not refusing to bring colorable litigation claims against any party-in-interest, including insiders, nor have the Debtors failed to acknowledge that such claims are assets of the Debtors.[1] As explained *infra*, the Debtors are not refusing to pursue any causes of action in this Bankruptcy Case, nor are any such claims at risk of being barred by the relevant statute of limitations (to the extent such statute had not run prior to the filing of the bankruptcy cases). Additionally, Jon Logan ("Jon") on behalf of

---

[1] Smart Holding assets include "[c]laims belonging to Smart Communications Holding, Inc. being pursued on a derivative basis" *See ECF 47.*

Smart Communications Yacht Holding, LLC, has acknowledged that the estate asserts an interest in the yacht sale proceeds and agreed that such proceeds will not be disposed of, or transferred, without giving Joseph Luzinski and the Debtors' attorneys at least two weeks' notice, so that the Debtors can seek this Court's intervention on an expedited basis.

Further, the claims the Trust wants to bring against Smart Communications Yacht Holding, LLC and Loco Florida, LLC would seek the exact same relief the Trust is currently seeking in the pending SubCon Adversary (defined *infra*). Finally, filing suit to recover the yacht sale proceeds and office building is premature at best and may be wholly unnecessary. In the prior bankruptcy case, Smart Holding, and Jon Logan on behalf of these companies, proposed to facilitate the sale of the yacht, contribute the proceeds from the sale, and to address the outstanding rent obligations to Loco Florida, LLC through a chapter 11 plan. The Trust's request for derivative standing is another attempt to enforce the state court proposed remedies that this Court has already twice ruled are stayed, and in effect would result in a termination of exclusivity before the Debtors can even file a plan. Granting the requested relief by the Trust, while the Debtors are in the process of negotiating consensual resolutions with a number of creditor constituents on a number of business issues that are central to the Debtors' future operations, will seriously hamper the Debtors' ability to reorganize. Ultimately, the Standing Motion fails to address all of the various matters that a fiduciary is required to consider before filing and prosecuting litigation claims.

## II.    **Background**

1.    On December 16, 2025, Smart Holding filed its Subchapter V case. Subsequently, on January 8, 2026, Smart Holding removed the Subchapter V designation.

2.    The Trust and the Debtors have been embroiled in extensive state court litigation before Judge Hunter Carroll in Sarasota County, Florida. Judge Carroll entered orders in that

proceeding, culminating in a valuation of the Trust's shares in Smart Holding.

3.     In his non-final orders, Judge Carroll found that the Debtors provided the down payment for a 100-foot Riva Corsaro yacht (the "Yacht") and real property used as Debtors' corporate headquarters ("Smart Comm's Headquarters"), and that both assets were titled in the names of non-debtor affiliates. Specifically, the Yacht was titled in the name of Smart Communications Yacht Holding, LLC ("SCYH"), and the headquarters property was titled in the name of Loco Florida, LLC ("Loco"). Importantly, Judge Carroll, in the proposed Purchase Order (which remains stayed and ineffectual), stated that the Court retained the right to direct the Debtor to institute legal proceedings to recover those assets but was **"not requiring [the Debtor] to seek to cause those assets to be retitled at this time."** (emphasis added)

4.     On May 11, 2026, the Trust filed its complaint seeking substantive consolidation of Loco, SCYH, and other non-debtor affiliates with the Debtors' estate[2] (the "SubCon Adversary") The Trust alleges that SCYH sold the Yacht in or around May 2026. The Trust now seeks derivative standing to pursue the Yacht sale proceeds and to retitle the Loco office building to the Debtors' name.  It is axiomatic that the relief sought by the Trust in the derivative standing motion is duplicative of the same relief sought by the Trust in the SubCon Adversary.

### III.     Legal Standard

Derivative standing is an extraordinary remedy, available only in limited circumstances when the debtor-in-possession has unjustifiably refused to pursue colorable estate claims. *In re iPCS, Inc.,* 297 B.R. 283, 290 (Bankr. N.D. Ga. 2003) (*quoting Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233 (5th Cir. 1988)). The Bankruptcy Code vests the debtor-in-possession with all the rights, powers, and duties of a trustee, including the exclusive authority to

---

[2] *See* Adv. Pro. 8:26-ap-00148.

prosecute avoidance actions and other claims belonging to the estate. *See* 11 U.S.C. § 1107. Under 11 U.S.C. § 1107(a), "a debtor-in-possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." This statutory framework reflects Congress's determination that the debtor-in-possession, as a fiduciary for all creditors, is best positioned to evaluate estate claims and determine whether prosecution serves the estate's interests. *See In re Breland*, 2018 Bankr. LEXIS 2031, *9 (Bankr. S.D. Ala. 2018) *citing Taub v. Taub (In re Taub),* 427 B.R. 208, 230 (Bankr. E.D.N.Y. 2010) *quoting Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 175 (2d Cir. 2005) (concluding that debtor-in-possession's "duty to wisely manage the estate's legal claims is implicit in the debtor's role as the estate's only fiduciary").

This includes the exclusive authority to prosecute avoidance actions under sections 544, 547, 548, and other provisions of the Bankruptcy Code, as well as other causes of action that constitute property of the estate under 11 U.S.C. § 541. *See In re McGuirk*, 414 B.R. 878, 879 (Bankr. N.D. Ga. 2009) ("A trustee's avoidance powers, including those under Sections 547, 548 and 549 of the Bankruptcy Code, are unique statutory powers intended to benefit the estate, not a single creditor. Standing to assert actions under Sections 547, 548 and 549 . . . is limited to the trustee, and individual creditors have no standing to bring such actions except through the trustee or debtor-in- possession."). *See, e.g., Syndicate Exch. Corp. v. Duffy (In re Pro Greens, Inc.)*, 297 B.R. 850, 855 (Bankr. M.D. Fla. 2003) (denying an individual creditor standing to bring an avoidance action).

"Because of its limited nature, derivative standing requires permission from the bankruptcy court. And derivative standing is appropriate only when: (i) the movant alleges a colorable claim

that would benefit the estate; and (ii) the trustee has unreasonably refused to pursue the claim." *In re Rothenbush*, 2017 Bankr. LEXIS 622, *4-5 (Bankr. M.D. Fla. Feb. 27, 2017).

IV.    **Argument**

1. **Derivative Standing is Unnecessary Because the Estate's Potential Claims Are Not in Danger of Expiring.**

Derivative standing is an extraordinary remedy intended to protect estate claims that would otherwise be lost through the estate representative's unjustified inaction. *See Surf N Sun Apts., Inc. v. Dempsey*, 253 B.R. 490, 493 (Bankr. M.D. Fla. 1999) ("some federal courts have crafted a limited exception allowing bankruptcy courts to grant 'derivative standing' to creditors institute avoidance actions on behalf of the estate upon 'showings of particularly extraordinary circumstances.'") *citing In re V. Savino Oil & Heating Co.*, 91 B.R. 655, 657 (Bankr. E.D. N.Y. 1988). No such concern or "extraordinary circumstances" are present here. Under 11 U.S.C. § 546(a), a two-year limitations period begins to run on causes of action brought under § 544. The Debtors commenced these chapter 11 cases in December 2025 and January 2026, respectively. The Trust identifies no exigency warranting the extraordinary remedy of derivative standing. Judge Carroll's proposed Purchase Order expressly preserved the Court's authority to direct the Debtor to institute proceedings to recover the assets "at this time," but did not impose any time limit.

Importantly, a debtor in possession is a *fiduciary* to all of its creditors and equity security holders." *SunCruz Casinos*, 298 B.R. at 829 (citing to *In re Bellevue Place Assoc.*, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994)(emphasis in original). "Because the DIP's fiduciary obligation is to the estate, and not to one group, the DIP must act to benefit the estate as a whole." *SunCruz Casinos*, 298 B.R. at 830 (citing to *In re Microwave Products of America, Inc.*, 102 B.R. 666, 671 (Bankr. W.D. Tenn. 1989). Moreover, during the "pendency of a bankruptcy case, 'a debtor-in-

possession has the duty to *protect and conserve* the property in his possession for the benefit of creditors.'" *In re Cummings*, 381 B.R. 810, 833 (S.D. Fla. 2007) (citing to *In re Toy King Distribs*., 256 B.R. 1, 171 (Bankr. M.D. Fla. 2000) (emphasis added); *see also In re 239 Worth Avenue Corp*., 236 B.R. 492 (Bankr. S.D. Fla. 1999)( "As a debtor-in-possession, the Debtor is obligated to protect and conserve property in its possession.").

Here, the Debtors are not refusing to pursue any causes of action in this Bankruptcy Case against any party, including insiders.[3] No evidence suggests that the Yacht sale proceeds are at risk of dissipation beyond recovery. There is no apparent present risk that the estate claims will be lost, thus the extraordinary remedy of derivative standing is unnecessary and premature. Rather, the Debtors are exercising the very fiduciary judgment expected of a debtor-in-possession by evaluating the timing, costs, collectability and necessity of such claims within the broader context of the reorganization. The present Bankruptcy Cases have only been pending for 7 months. There is no impending statute of limitation deadlines requiring immediate action, and therefore there is plenty of time to bring such actions, if warranted and not otherwise dealt with in the reorganization, including under any plan to be filed and prosecuted by the Debtors.

2. **Granting Derivative Standing Would Result in Duplicative Litigation Because the Trust is Already Pursuing These Assets.**

Next, the Trust's request to seek derivative standing to pursue claims against SCYH and Loco is duplicative of the relief the Trust is already pursuing in the SubCon Adversary. On May 11, 2026, the Trust filed an adversary proceeding seeking to substantively consolidate SCYH, Loco and other non-debtor affiliates with the Debtors' estates. Substantive consolidation is an equitable remedy that, if granted, would pool the assets and liabilities of the consolidated entities,

---

[3] These bankruptcy estates similarly have claims against the Trust that have not yet been brought because the Debtor, as an estate fiduciary, has determined now is not the appropriate time to litigate such claims.

thereby bringing the Yacht sale proceeds and Smart Comm's Headquarters into the bankruptcy estate. *See Kapila v. S & G Fin. Servs., LLC (In re S&G Fin. Servs.)*, 451 B.R. 573, 579 (Bankr. S.D. Fla. 2011). The Trust's motion for derivative standing seeks the identical result: recovery of the Yacht sale proceeds and retitling of the Smart Comm's Headquarters property for the benefit of the estate. Both actions target the same assets and seek the same ultimate relief of bringing those assets under the control of the bankruptcy estate. The only difference is the procedural vehicle. Permitting both to proceed would waste both estate and judicial resources.

Allowing the Trust to pursue derivative standing while simultaneously litigating substantive consolidation would only create duplicative and potentially conflicting proceedings. Granting derivative standing would allow the Trust to pursue a second avenue to the same relief after initiating the first, effectively giving the Trust two bites at the same apple.

3. **The Requested Relief Could Undermine the Debtor's Chapter 11 Reorganization and Reduce Value Available to Creditors.**

The Trust's request disregards the Debtors' ongoing efforts to maximize value through the chapter 11 process. One of the principal purposes of chapter 11 is to permit a debtor-in-possession to evaluate estate assets and determine how best to administer those assets through a plan of reorganization or liquidation for the benefit of all creditors, not just one single creditor. The mere fact that the debtor-in-possession has not yet filed suit to recover certain assets does not establish refusal, it merely reflects the ongoing exercise of business judgment regarding litigation strategy, timing, and resource allocation. Indeed, the Debtors have, thus far, refrained from pursuing recovery of a $3 million asset (a mansion in Sarasota purchased with the Debtors' funds and titled to the Debtors) that has long been occupied by Janice without the Debtors' consent. Moreover, Smart Holding has previously demonstrated its intent to administer certain non-debtor assets, with the consent of Jon Logan, through a chapter 11 plan. In Smart Holding's prior chapter 11 case, the

proposed plan specifically contemplated that Smart Communications Yacht Holdings, LLC would sell the 2020 Riva Corsaro vessel and contribute the net sale proceeds, after satisfaction of liens and closing costs, to fund the plan for the benefit of creditors.[4]

The previous inclusion of the Yacht proceeds in the Debtor's chapter 11 plan demonstrates that proceeds of these assets may ultimately be realized by the estate for the benefit of creditors. The Debtors are currently evaluating their assets and preparing to formulate a chapter 11 plan in this case, and may, in conjunction with an agreement with Jon Logan, likewise determine that the Yacht sale proceeds, the Smart Comm's Headquarters property, or both, should be administered through a confirmed plan for the benefit of all creditors.

Granting derivative standing now to the Trust would improperly interfere with the Debtors' process and plan strategy. Such relief risks impairing the Debtors' flexibility in negotiating and proposing a confirmable plan, increasing administrative expenses through duplicative litigation, and ultimately diminishing the value available for distribution to creditors generally.

## V.    Conclusion

The Trust's motion for derivative standing should be denied. The estate's claims are not in danger of expiring, granting derivative standing would result in duplicative litigation, and the requested relief could undermine the reorganization of the Debtors and reduce value available to creditors.

WHEREFORE, the Debtors respectfully request that this Court (i) deny the Trust's Standing Motion, (ii) preserve the debtor-in-possession's exclusive authority to manage estate property and prosecute estate claims; and (iii) grant such other and further relief as this Court deems just and proper.

---

[4] *See In re Smart Communications Holding., Inc and Smart Communications Holding, LLC.*, Case No. 8:24-bk-07106-RCT [ECF No. 46, p. 5]

DATED: July 8, 2026.

**VENABLE LLP**
*Attorneys for Smart Communications Holding, Inc.*
 *and Smart Communications Collier, Inc.*

 */s/ Eric D. Jacobs*
Paul J. Battista, Esq.
Florida Bar No. 884162
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Phone: 305.349.2300
Email: pjbattista@Venable.com

- and -

Eric D. Jacobs, Esq.
Florida Bar No. 85992
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Phone: 813.439.3100
Email: ejacobs@Venable.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 8, 2026, a true and correct copy of the foregoing document has been furnished via electronic mail by virtue of the Court's CM/ECF System to all parties registered to receive notice in this action.

By: */s/ Eric D. Jacobs*
Paul J. Battista, Esq.
Eric D. Jacobs, Esq.