UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

SMART COMMUNICATIONS HOLDING, INC.,

SMART COMMUNICATIONS COLLIER, INC.,

Debtors.

_____/

SMART COMMUNICATIONS COLLIER, INC.,

Applicable Debtor.

_____/

Chapter 11
Case No. 8:25-bk-09473-RCT

*Jointly Administered with*
Case No. 8:26-bk-00146-RCT

Case No. 8:26-bk-00146-RCT

**DEBTOR'S MOTION FOR AUTHORITY TO PAY OFFICER SALARY
AND TO APPROVE COMPROMISE CONTROVERSY**

**NOTICE OF OPPORTUNITY TO OBJECT
AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of the Court, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Suite 555, Tampa, Florida 33602, and serve a copy on the Movant, Eric D. Jacobs, Esq., within 21 days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

SMART COMMUNICATIONS COLLIER, INC. (the "Debtor" or "Smart Collier"), by

and through undersigned counsel, respectfully moves this Court pursuant to sections 105(a),

363(b), 503(c)(3), 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2016 and 9019 of the Federal Rules of Bankruptcy Procedure, and Local Rule 2002-4 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, for entry of an order authorizing the Debtor to pay the salary of Jonathan D. Logan ("Jon Logan"), as president of the Debtor, during these Chapter 11 cases, including as part of a negotiated settlement and compromise in connection therewith. In support thereof, the Debtor states as follows:

**Background**

1.      On December 16, 2025, Smart Communications Holding, Inc. ("Smart Holding") filed a voluntary petition for relief under Chapter 11, subchapter V, of Title 11 of the United States Code (the "Bankruptcy Code"). On January 8, 2026, Smart Holding filed an Amended Petition to remove the subchapter V designation. *See* ECF No. 51.

2.      On January 8, 2026 (the "Smart Collier Petition Date"), Smart Collier filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. *See* Case No. 8:26-bk-00146-RCT.

3.      The Smart Communications enterprise was started in 2009 by Jon Logan. Smart Holding was formed in December 2014, to act as the holding company for the Smart Communications related businesses. Jon Logan is the sole officer and sole director of Smart Holding. Smart Collier was formed in February 2012 and is the primary operating entity for the Smart Communications' related businesses. Jon Logan is the sole officer and sole director of Smart Collier.

4.      On January 12, 2026, upon the motions of Smart Holding and Smart Collier (together, the "Debtors"), this Court entered the *Order Granting Debtor's Motion for Joint*

*Administration* [Smart Holding ECF No. 61 and Smart Collier ECF No. 20], jointly administering these chapter 11 cases under Lead Case No. 8:25-bk-09473-RCT.

5.       The Debtors are managing their affairs as a debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.       On March 13, 2026, Smart Collier filed the *Debtor's Motion for Authority to Pay Limited Officer Insurance Benefits Retroactive to January 8, 2026* [ECF No. 162] (the "Benefits Motion"), which sought approval to pay the medical insurance and a nominal life insurance policy for Jon Logan, as the Debtors' sole officer and sole director, and preserved the Debtors' right to seek the payment of a salary to Jon Logan at a later date.

7.       On April 2, 2026, following a hearing on the Benefits Motion, this Court entered the *Order Granting Debtor's Motion for Authority to Pay Limited Officer Insurance Benefits Retroactive to January 8, 2026* [ECF No. 194], which authorized Smart Collier to pay the medical insurance and nominal life insurance policy, amounting to $411.96 per pay period, for Jon Logan.

8.       On April 3, 2026, upon the motion of the Debtors, this Court entered the *Order Granting, on a Final Basis, Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for Authority to Employ and Retain Joseph J. Luzinski as Chief Restructuring Officer and Other Personnel at Development Specialists, Inc. to Provide Advisory Services Effective as of January 8, 2026* [ECF No. 196], which Order authorized the Debtors to employ Joseph J. Luzinski as Chief Restructuring Officer (the "CRO") on a final basis, including specifically to authorize the CRO to negotiate and, if appropriate in his business judgment, seek approval of certain insider transactions, including the proposed compensation to Jon Logan as set forth herein.

**History of Officer Salary**

9.    Prior to the Collier Petition Date, Jon Logan received a gross salary of only $120,000.00 between January 1, 2025 and December 31, 2025,[1] as evidenced in Smart Collier's Statement of Financial Affairs [ECF No. 28]. *See* ECF No. 28, pp. 44, 52. In addition to his salary, Smart Collier has paid for medical insurance benefits, including health, vision, and dental insurance, and a nominal life insurance policy. *See* ECF No. 28, p. 45. The benefit amounts paid by Smart Collier to Jon Logan are $410.88 per pay period for medical insurance and $1.08 per pay period for a life insurance policy, amounting to $411.96 per pay period or $9,887.04 per year.

10.    Jon Logan is the founder, sole officer and director for several other entities, including Loco Florida, LLC, and HLFIP Holding, LLC. However, he has not historically received compensation from any source other than Smart Collier, nor do any of those entities have any ability to pay compensation to Jon Logan.

11.    From and after January 8, 2026 (the "Collier Petition Date"), Jon Logan has not received compensation as the CEO of the Debtors, despite being in charge of the day-to-day operations of the Debtors, which includes management of at least thirteen different department heads operating 24/7/365, with office locations in 4 different states, overseeing customer relationships and services operations in 31 states, and managing all business matters concerning the Debtors.[2]

---

[1] In the state court litigation with the Trust, Judge Carroll previously allowed for an annual salary for Jon Logan in the amount of $720,000.00, upon the sale of the 2020 Riva Corsaro, which has occurred.
[2] Due to a miscommunication with the Debtor, which is solely the fault of undersigned counsel, counsel was not aware that Jon Logan was receiving a $120,000 per year salary until the 341 meeting on March 4, 2026. Jon Logan has refunded the net payroll he received post-petition to Smart Collier.

12. Through this Motion and as set forth below, the Debtor (through the CRO) and Jon Logan (collectively, the "Parties"), seek to resolve the issue of the amount and payment of an officer salary for Jon Logan during these Chapter 11 cases in connection with his role as the CEO of the Debtor.

13. The CRO and Jon Logan have been negotiating an appropriate salary for services that Jon Logan performs for the Debtor. Initially, Jon Logan requested an annual salary of $2,000,000.00, which was approximately the median of the ranges established by two officer compensation studies previously obtained by the Debtors (1.5% to 2.3% of annual gross sales, at an assumed $100 Million in annual gross sales). While negotiating with Jon Logan, the CRO performed an analysis of CEO compensation for technology companies similar to those of the Debtors in both the Tampa area and expanded nationwide. Based on the CRO's research, the range of CEO compensation for a company similar to that of the Debtor located in the Tampa area is between $680,000.00 to $880,000.00. The CRO's nationwide search reveals a range between $700,000.00 and $900,000.00 for CEO compensation. In each case, there are certainly outliers both less than and higher than these ranges. Based on the research of the CRO and with an understanding of what Jon Logan has built for 17 years and continues to expand upon, and the degree of Jon's involvement in the day-to-day operations of the Debtors, the CRO and Jon Logan agreed to an annual compensation for Jon Logan during these Chapter 11 cases in the amount of $850,000.00, effective from and after January 1, 2026, with a catch-up payment for 2026 to be made with the first pay period upon approval of this Motion.

14. The Debtor, through the CRO, has determined, in its exercise of its sound business judgment, that the proposed compensation for Jon Logan is fair, reasonable, and necessary to preserve the value of the estate. The proposed compensation is commensurate with Jon Logan's

responsibilities and the extensive services he provides to both Debtors. It also is substantially less than the expense, delay, disruption, and loss of institutional knowledge that would result from attempting to replace him during these Chapter 11 cases.

15.    Jon Logan's continued leadership is essential to the Debtor's ability to maintain ordinary business operations, preserve relationships with vendors, customers, distributors, manufacturers, and other business partners, supervise over 200 employees and independent contractors, manage pending litigation, perform weekly technology presentations to potential new customers, structure and approve business offers and negotiate business deals. Accordingly, the Debtor, through the CRO, asserts that authorization of the proposed post-petition salary for Jon Logan is in the best interests of the Debtors' estates, their creditors, and other parties in interest.

**Basis for Relief Requested**

16.    Section 363(b)(1) authorizes a debtor in possession, after notice and a hearing, to use property of the estate outside the ordinary course of business upon demonstrating a sound business justification. As debtors in possession under sections 1107(a) and 1108, the Debtors possess the rights and powers of a trustee, including the authority to seek approval of compensation arrangements for insiders where appropriate.

17.    Section 105(a) authorizes this Court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code. Together with sections 363(b) and 503(c)(3), section 105(a) authorizes the Court to approve reasonable insider compensation where warranted by the facts and circumstances of the case.

18.    Section 503(c)(3) provides that transfers made to, or obligations incurred for the benefit of, insiders outside the scope of sections 503(c)(1) and (2) may be approved only if justified by the facts and circumstances of the case. The compensation requested herein does not

constitute a retention payment, incentive payment, or severance obligation. Rather, it is ordinary-course compensation for ongoing services rendered by Jon Logan to the Debtor during these Chapter 11 cases.

19.     Courts applying Section 503(c)(3) generally consider whether: (a) compensation is reasonable in light of the services rendered; (b) the insider's services are necessary for the debtor's ongoing operations and reorganization; (c) the proposed compensation is comparable to compensation paid to similarly situated officers in the industry; and (d) whether the compensation serves the best interests of the estate and its creditors. *See In re Dana Corp.*, 358 B.R. 567, 576–77 (Bankr. S.D.N.Y. 2006) (articulating factors for evaluating insider compensation under § 503(c)(3)); *In re Global Home Prods., LLC*, 369 B.R. 778, 785–87 (Bankr. D. Del. 2007).

20.     The requested relief readily satisfies these standards. Jon Logan serves as the Debtors' sole executive officer and principal decision maker. He manages the Debtor's enterprise which provides its customers with comprehensive inmate communication systems including telephone, video visitation, electronic messaging, streaming media platforms, and other services that are fully integrated through a single web-based dashboard, providing a single location for authorized staff to access all system administration, monitoring, reporting, data sharing and investigation tools. Smart Communications' client footprint, under Jon Logan's leadership, has grown over the course of 17 years, from a single account to more than 150 facilities throughout 31 states. His continued service is indispensable to preserving the Debtors' going-concern value and maximizing recoveries for creditors.

21.     Middle District authority further supports court approval of officer compensation where, as here, the officer plays a central role in the debtor's operations and estate administration. In *In re Florida Airlines, Inc.*, the District Court affirmed the Bankruptcy Court's determination

that the debtor's president was subject to court approval and scrutiny because he played a "central role in the administration of the debtor proceeding." 110 B.R. 570, 571–72 (M.D. Fla. 1990). The court explained that requiring approval of officer compensation protects creditors from needless depletion of estate assets while allowing the debtor to continue operating. *Id*. at 572. That principle supports approval here because Jon Logan's services are necessary to preserve value, maintain operations, and advance the Debtors' restructuring efforts.

### Terms of Compromise

22.     Subject to approval by the Bankruptcy Court, the Parties have agreed to the following terms (the "Settlement Agreement").

    a.  Officer Salary.  The Parties agree that Jon Logan shall be paid $850,000.00 per year as CEO of the Debtors, effective as of January 1, 2026. Such salary shall not be binding as to post confirmation salary.

    b.  Catch-Up Payment. Upon approval of this Motion, Jon Logan will receive a catch-up payment for the period from and after January 1, 2026 through the entry of an order granting this Motion based on $850,000 agreed compensation.

23.     The Debtor asserts that the Settlement Agreement outlined herein is in the best interests of the Debtors' estates. The terms of the Settlement Agreement will allow the disputes between the Debtor and Jon Logan, as to appropriate post-petition compensation, to be resolved expeditiously while ensuring no disruption to the Debtors' business operations.

### Standards for Court Approval

24.     "It is generally recognized that the law favors settlement of disputes over litigation for litigation sake." *In re Bicoastal Corp.*, 164 B.R. 1009 (Bankr. M.D. Fla. 1993). Bankruptcy Rule 9019(a) grants the Court authority to approve settlements and controversies after notice and a hearing. *See* Fed. R. Bankr. P. 9019.

25.     Under Rule 9019, bankruptcy courts consider the overall wisdom of compromising and settling disputes to determine "whether the proposed settlement is fair and equitable." *In re Air Safety Developmental, L.C.*, 336 B.R. 843 (S.D. Fla. 2005) (*citing In re Gallagher*, 283 B.R. 342, 246 (Bankr. M.D. Fla. 2002)). The question is not whether a better settlement might have been achieved or a better result reached in litigation, but rather whether the settlement falls "below the lowest point in the range of reasonableness." *In re Bicoastal Corp.*, 164 B.R. at 1016.

26.     In deciding whether a settlement is reasonable, bankruptcy courts consider the following factors: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In re Soderstrom*, 477 B.R. 249, 252 and 255 (Bankr. M.D. Fla. 2012) (citing *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir. 1990)).

### Application of *Justice Oaks* factors

27.     <u>Probability of success in the litigation:</u> If the appropriate amount of the salary were to be litigated, the amount set by this Court would likely be between $700,000.00 and $900,000.00 but could potentially be as great as $2,000,000.00. Given this disparity, and the uncertainty of litigation, the Debtor, through the CRO, asserts that this factor weighs heavily in favor of the proposed compromise.

28.     <u>Difficulties, if any, to be encountered in the matter of collection</u>: This matter does not involve collection, thus this factor is neutral.

29.     <u>Complexity of the litigation involved:</u> This dispute is complex and would require the retention of experts to determine the appropriate salary for a highly experienced, long tenured

CEO of a technology company with approximately $100,000,000.00 in annual gross revenue in a very specialized, highly competitive, and highly regulated space. Resolving this matter without an evidentiary hearing provides significant expense savings to the estates and creditors, which favors approval of the compromise.

30.    Expense, inconvenience, and delay necessarily attending the litigation: Litigating the amount of compensation for Jon Logan would increase the administrative expenses, delay the administration of the estate, and potentially cause the Debtors' business operations to be interrupted until the dispute is resolved. A quick settlement will allow for the Debtors' business operations to continue to grow and increase the distribution to unsecured creditors while minimizing cost and delay.

31.    Paramount interest of the creditors and a proper deference to their reasonable views in the premises: The compromise is in the best interests of the Debtors' estates and creditors because it will increase the distribution to all parties-in-interest, with minimal delay and expense, as Jon Logan's employment is critical and necessary to the continued operations and success of the Debtors.

**Conclusion**

32.    The Debtor, through the CRO, believes in its business judgment that the terms of the compromise contained herein are fair and reasonable and in the best interests of the estates and creditors, as it allows for the continued operations and expansion of the Debtors' business while incurring minimal litigation expense. Thus, the Debtor respectfully submits that this Motion should be granted pursuant to Bankruptcy Rule 9019(a) and Bankruptcy Code Section 105(a), and the compromise should be approved.

**WHEREFORE**, for the reasons stated herein, the Debtor respectfully requests that the Court grant this Motion and enter an order: (a) authorizing the Debtor to pay Jon Logan the post-petition salary described herein, including the catch-up payment; (b) authorizing the Debtor to withhold and remit all applicable payroll taxes and deductions; (c) authorizing all banks and payroll processors to honor payments made pursuant to the Order; (d) approving the Settlement Agreement, and (e) awarding such further relief as the Court may deem just and proper.

DATED: July 22, 2026.

**VENABLE LLP**
*Attorneys for Smart Communications Holding, Inc.*
  *and Smart Communications Collier, Inc.*

 */s/ Eric D. Jacobs*
Paul J. Battista, Esq.
Florida Bar No. 884162
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Phone: 305.349.2300
Email: pjbattista@Venable.com

- and -

Eric D. Jacobs, Esq.
Florida Bar No. 85992
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Phone: 813.439.3100
Email: ejacobs@Venable.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 22, 2026, a true and correct copy of the foregoing document has been furnished via electronic mail by virtue of the Court's CM/ECF System to all parties registered to receive notice in this action and via First Class U.S. Mail to all parties listed on the attached mailing matrix who do not receive service via CM/ECF.

By: *   /s/ Eric D. Jacobs*
        Eric D. Jacobs, Esq.