UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

|  |  |
|---|---|
| | Chapter 11 |
| SMART COMMUNICATIONS HOLDING, INC., | Case No. 8:25-bk-09473-RCT |
| | *Jointly Administered with* |
| SMART COMMUNICATIONS COLLIER, INC., | Case No. 8:26-bk-00146-RCT |
| Debtors. | |

_____/

|  |  |
|---|---|
| SMART COMMUNICATIONS COLLIER, INC., | Case No. 8:26-bk-00146-RCT |
| Applicable Debtor. | |

_____/

**DEBTOR'S MOTION TO APPROVE COMPROMISE BETWEEN
THE DEBTOR AND LOCO FLORIDA, LLC OR, IN THE ALTERNATIVE,
MOTION FOR AUTHORITY TO ENTER INTO LEASE AGREEMENT
<u>WITH LOCO FLORIDA, LLC RETROACTIVE TO JANUARY 8, 2026</u>**

**NOTICE OF OPPORTUNITY TO OBJECT
AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of the Court, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Suite 555, Tampa, Florida 33602, and serve a copy on the Movant, Eric D. Jacobs, Esq., within 21 days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

SMART COMMUNICATIONS COLLIER, INC. (the "Debtor" or "Smart Collier"), through counsel and pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 363, files this *Motion to Approve Compromise Between the Debtor and LOCO Florida, LLC or, in the Alternative, Motion for Authority to Enter Into Lease Agreement With LOCO Florida, LLC Retroactive to January 8, 2026* (the "Motion"). In support thereof, the Debtor states as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought is Federal Rule of Bankruptcy Procedure 9109 and Section 105 of the Bankruptcy Code.

### Background

2.      On December 16, 2025, Smart Communications Holding, Inc. ("Smart Holding") filed a voluntary petition for relief under Chapter 11, subchapter V, of Title 11 of the United States Code (the "Bankruptcy Code"). On January 8, 2026, Smart Holding filed an Amended Petition to remove the subchapter V designation. *See* ECF No. 51.

3.      On January 8, 2026 (the "Smart Collier Petition Date"), Smart Collier filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. *See* Case No. 8:26-bk-00146-RCT.

4.      The Smart Communications enterprise was started in 2009. Smart Holding was formed in December 2014 to act as the holding company for the Smart Communications' related businesses. Jonathan D. Logan ("Jon Logan") is the sole officer and sole director of Smart Holding. Smart Collier was formed in February 2012 and is the primary operating entity for the Smart

Communications' related businesses. Jon Logan is the sole officer and sole director of Smart Collier.

5.      On January 12, 2026, upon the motions of Smart Holding and Smart Collier (together, the "Debtors"), this Court entered the *Order Granting Debtor's Motion for Joint Administration* [Holding ECF No. 61 and Collier ECF No. 20], jointly administering these chapter 11 cases under Lead Case No. 8:25-bk-09473-RCT.

6.      On April 3, 2026, upon the motion of the Debtors, this Court entered the *Order Granting, on a Final Basis, Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for Authority to Employ and Retain Joseph J. Luzinski as Chief Restructuring Officer and Other Personnel at Development Specialists, Inc. to Provide Advisory Services Effective as of January 8, 2026* [ECF No. 196], which authorized the Debtors to employ Joseph J. Luzinski as their Chief Restructuring Officer (the "CRO").

7.      The Debtors are managing their affairs as a debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      Smart Holding is a holding company with no direct operations. The Smart Communications enterprise, through Smart Collier, conducts operations largely from its principal office located at 10491 72nd Street, Seminole, Florida 33777 (the "Premises"). The Premises are leased from LOCO Florida, LLC ("Loco"), a Delaware limited liability company, which is owned by Jon Logan.

9.      On February 24, 2026, Loco filed Proof of Claim No. 14-1 in the amount of $1,440,000.00 (the "Loco Claim") in the Smart Holding case. The Loco Claim is based on accrued and unpaid rent for the Debtors' use and occupation of the Premises.  The Loco Claim is based on

an assumed rental rate of $40,000.00 per month, which is an amount that was previously demanded by the Trust to be paid to Loco.

10.     On April 9, 2026, Loco filed Proof of Claim No. 1-1 in the Smart Collier case, which is identical to the Loco Claim filed in the Smart Holding case (collectively, the "Loco Claims").

**Analysis of the Premises and Comparable Rental Market**

11.     In May 2020, Loco acquired the Premises through an inter-company loan from the Debtors. As repayment of the loan, Loco did not collect any rent from the Debtors for their use and occupancy of the Premises from the date the Premises was acquired through January 2023. *See Loco Claim* pg. 4.  However, the Debtors have continued to use and occupy the Premises from January 2023 through the present.

12.     Loco has demanded that the Debtors pay rent for the use and occupation of the Premises from and after January 8, 2026, the Smart Collier Petition Date.  In connection therewith, Loco asserted that the fair market rental rate for the Premises is $40,000.00 per month, including based on a previous demand made by the Trust.

13.     In response, the CRO performed an analysis of the rental market for buildings similar to that of the Premises in the Tampa and St. Petersburg areas. The Premises spans 13,090 square feet and is part warehouse and industrial and part office space. The CRO's position is that the Premises is more akin to "flex" space than fully warehouse or fully office space. Accordingly, the CRO researched the market for comparable rents on similar flex spaces in the Tampa and St. Petersburg areas. The range for such comparable properties is between $25.00 and $32.00 per square foot.  Such rental rates are not on a triple net basis, meaning that the landlord (in this case, Loco) would be obligated to pay the real estate taxes and insurance on the physical

structure, to maintain the physical structure and to maintain the larger mechanical systems within the Premises, while the tenant (in this case, the Debtors) would generally be responsible for the maintenance of the interior space and insurance on its property located within the Premises.

14.     Based on the CRO's research outlined above, the CRO responded to Loco's demand and advised Loco that his view of the fair market monthly rent charges for the Premises is from $27,270.00 to $34,906.00 per month. Thereafter, the CRO, the Debtors' counsel, and Loco, through counsel, engaged in good faith settlement negotiations in an effort to reach agreement on a monthly rental rate for the Premises, among other terms for a continued lease of the Premises.

15.     Based on those negotiations, the CRO and Loco reached agreement on a monthly rental charge for the Premises in the amount of $32,000.00, together with a catch-up payment for the post-petition period since January 8, 2026. In addition, and in connection therewith, the Debtor and Loco (the "Parties") agreed to enter into a mutually agreeable lease for a period of five (5) years with annual CPI increases for the term of the lease. As set forth above, the lease shall also provide that Loco will be responsible for paying the real estate taxes and insurance on the physical structure and will be responsible for maintaining the physical structure as well as the larger mechanical systems within the Premises. The Debtors will be responsible for the maintaining the interior space and providing for insurance on their property located within the Premises.

16.     Through this Motion, the Parties seek to resolve and settle the issues between them related to rent to be paid for the use and occupancy of the Premises as well as the material terms of a new lease, all pursuant to terms set forth herein.

**Terms of Compromise**

17.      Subject to final approval by the Bankruptcy Court through the entry of an order that

has become final and non-appealable, the Parties have agreed to the following terms (the "Lease

Settlement").

     a.   The Parties agree that Smart Collier shall pay Loco a monthly rent of $32,000.00 per month for the use and occupancy of the Premises located at 10491 72nd Street, Seminole, Florida 33777.

     b.   The Debtors shall pay Loco a catch-up payment for the post-petition period from January 8, 2026 to July 31, 2026 in the amount of $215,742.00.

     c.   The Parties shall enter into a mutually agreeable five (5) year lease for the Premises beginning August 1, 2026 and ending August 1, 2031. The lease shall provide for an annual CPI increase for the term of the lease.

     d.   The lease shall also provide that Loco will be responsible for paying the real estate taxes and insurance on the physical structure and will be responsible for maintaining the physical structure as well as the larger mechanical systems within the Premises.  The Debtors will be responsible for the maintenance of the interior space and insurance on their property located within the Premises.

     e.   In the event the Debtors reject the lease for any reason, then Loco agrees to waive any right to a Chapter 11 administrative expense claim for any rejection damages related thereto or arising therefrom.

     f.   Loco agrees to waive any distribution on the Loco Claims.

18.      The Debtor asserts that the Lease Settlement outlined herein is in the best interests

of the Debtors' estates. The terms of the Lease Settlement will resolve the disputes between the

Debtors and Loco in respect of the Debtors' continued use and occupation of the Premises for the

continued operations of the Debtors.

**Standards for Court Approval**

19.      "It is generally recognized that the law favors settlement of disputes over litigation

for litigation sake." *In re Bicoastal Corp.*, 164 B.R. 1009 (Bankr. M.D. Fla. 1993). Bankruptcy

Rule 9019(a) grants the Court authority to approve settlements and controversies after notice and a hearing. *See* Fed. R. Bankr. P. 9019.

20. Under Rule 9019, bankruptcy courts consider the overall wisdom of compromising and settling disputes to determine "whether the proposed settlement is fair and equitable." *In re Air Safety Developmental, L.C.*, 336 B.R. 843 (S.D. Fla. 2005) (*citing In re Gallagher*, 283 B.R. 342, 246 (Bankr. M.D. Fla. 2002)). The question is not whether a better settlement might have been achieved or a better result reached in litigation, but rather whether the settlement falls "below the lowest point in the range of reasonableness." *In re Bicoastal Corp.*, 164 B.R. at 1016.

21. In deciding whether a settlement is reasonable, bankruptcy courts consider the following factors: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In re Soderstrom*, 477 B.R. 249, 252 and 255 (Bankr. M.D. Fla. 2012) (citing *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir. 1990)).

### Application of *Justice Oaks* factors

22. <u>Probability of success in the litigation:</u> The probability of success in the litigation is uncertain; however, it is highly likely that any litigation involving the dispute over the Debtors' use and occupancy of the Premises would affect the Debtors' operations. Moreover, if the Debtors do not succeed in such litigation, then the Debtors run the risk of Loco seeking to terminate the Debtors' current use and possession of the Premises. In that situation, the Debtors would be forced to locate new premises, enter into a new lease and move their entire operations. The compromise

set forth in the Lease Settlement allows the Debtors to avoid that risk, expense and delay, which favors approval.

23.    <u>Difficulties, if any, to be encountered in the matter of collection</u>: This dispute would not entail collection but would entail litigation costs which the Debtors wish to avoid through compromise.

24.    <u>Complexity of the litigation involved:</u> The dispute is not overly complex but resolving it would likely require an evidentiary hearing at significant expense to the estates, which favors approval of the compromise.

25.    <u>Expense, inconvenience, and delay necessarily attending the litigation</u>: Litigating the amount of monthly rent for the Premises would increase the administrative expenses, delay the administration of the estates, and potentially cause the Debtors' business operations to come to a halt until the dispute is resolved and/or while the Debtors locate a new facility to lease. A quick settlement will allow for the Debtors' business operations to continue and increase the distribution to unsecured creditors while minimizing cost and delay.

26.    <u>Paramount interest of the creditors and a proper deference to their reasonable views in the premises:</u> The compromise is in the best interests of the Debtors' estates and creditors because it will resolve the Debtors access to the Premises to continue operating without interruption or the expense of moving.  Moreover, Loco's agreement to waive an administrative expense claim in the event of a future rejection of the new lease is a substantial benefit to the creditors of the estates.

**Authority to Enter into the Lease Agreement Under 11 U.S.C. § 363**

27.     Alternatively, Smart Collier seeks authority to enter into the lease described above with Loco (the "Lease") retroactive to January 8, 2026, pursuant to 11 U.S.C. § 363 and to make all payments and take all actions required of the Debtors under such proposed Lease.

28.     The Lease is the product of good faith negotiations between the Parties through counsel. Based on the CRO's research, the terms of the Lease are commercially reasonable, and it is in the best interest of the estates that the Lease be approved.

29.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor, without notice or hearing, to enter into transactions in the ordinary course of business. The Debtor submits that entering into the Lease is an ordinary course transaction and court approval is not required.

30.     To the extent that entering into the Lease is not ordinary course, Section 363(b)(1) authorizes a debtor, after notice and a hearing, to enter into transactions that are outside the ordinary course of business. Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to Section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., In re Gulf States, Steel, Inc.* 285 B.R. 497 (Bankr. N.D. Ala. 2002); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1983); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2nd Cir. 1983); *In re Delaware & Hudson R.R. Co.,* 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.)*; 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business

decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct").

31.    The Debtors, through the CRO, have determined in their business judgment that the Lease is in the best interest of the estates. The Premises leased by the Debtor are utilized as the headquarters of the Debtors' business, and the Debtors intend to file a plan of reorganization that provides for continued use and occupancy of the Premises.

## Conclusion

32.    The Debtors, through the CRO, believe in their business judgment that the terms of the Lease Settlement are fair and reasonable and in the best interests of the estates and creditors, as it allows for the continued and uninterrupted operations of the Debtors' business on commercially reasonable terms. Thus, the Debtor respectfully submits that this Motion should be granted pursuant to Bankruptcy Rule 9019(a) and Bankruptcy Code Section 105(a), and the compromise should be approved. In the alternative, the Debtor requests that this Court authorize the Debtor to enter into the Lease with Loco pursuant to 11 U.S.C. § 363, and to make all payments and take all actions required of the Debtor under the Lease as set forth herein effective back to January 8, 2026.

**WHEREFORE**, the Debtor respectfully requests the entry of an order: (i) granting this Motion, (ii) approving the Lease Settlement between the Debtor (through the CRO) and Loco, or, in the alternative, authorize the Debtor to enter into the Lease with Loco pursuant to 11 U.S.C. § 363, and to make all payments and take all actions required of the Debtor under the Lease retroactive to January 8, 2026, and (iii) awarding such further relief as the Court may deem just and proper.

DATED: July 22, 2026.

**VENABLE LLP**
*Attorneys for Smart Communications Holding, Inc.*
*and Smart Communications Collier, Inc.*

 */s/ Eric D. Jacobs*
Paul J. Battista, Esq.
Florida Bar No. 884162
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Phone: 305.349.2300
Email: pjbattista@Venable.com

- and -

Eric D. Jacobs, Esq.
Florida Bar No. 85992
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Phone: 813.439.3100
Email: ejacobs@Venable.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 22, 2026, a true and correct copy of the foregoing document has been furnished via electronic mail by virtue of the Court's CM/ECF System to all parties registered to receive notice in this action and via First Class U.S. Mail to all parties listed on the attached mailing matrix who do not receive service via CM/ECF.

By:   */s/ Eric D. Jacobs*
      Eric D. Jacobs, Esq.