UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

SMART COMMUNICATIONS HOLDING, INC.

SMART COMMUNICATIONS COLLIER, INC.

Debtors.
_____________________________________/

Chapter 11

Case No. 8:25-bk-09473-RCT

*Jointly Administered with*
Case No. 8:26-bk-00146

# JOINT CHAPTER 11 PLAN OF REORGANIZATION

Dated: October 9, 2026.

**VENABLE LLP**
*Attorneys for Smart Communications Holding, Inc. and Smart Communications Collier, Inc.*

Paul J. Battista, Esq.
Florida Bar No. 884162
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Phone: 305.349.2300
Email: pjbattista@venable.com

- and -

Eric D. Jacobs, Esq.
Florida Bar No. 85992
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Phone: 813.439.3100
Email: ejacobs@venable.com

**TABLE OF CONTENTS**


ARTICLE I DEFINITIONS ........ 1

A. Scope of Definitions ........ 1

B. Rules of Interpretation ........ 11

C. Exhibits. ........ 12

ARTICLE II LIMITED SUBSTANTIVE CONSOLIDATION OF THE DEBTORS ........ 12

A. Limited and Procedural Substantive Consolidation for Purposes of Voting on, Confirmation of, and Distribution Purposes ........ 12

B. Treatment of Guaranty Claims Against a Debtor ........ 13

ARTICLE III TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEES FEES ........ 13

A. Generally ........ 13

B. Treatment ........ 14

1. Administrative Claims ........ 14

2. Priority Tax Claims. ........ 15

3. United States Trustee's Fees ........ 16

ARTICLE IV CLASSIFICATION OF CLAIMS AND INTERESTS ........ 17

A. Generally ........ 17

B. Classification ........ 17

ARTICLE V TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ........ 18

A. The Joint Plan of Reorganization for Smart Communications Holding, Inc. and Smart Communications Collier, Inc. ........ 18

1. Unclassified Claims ........ 18

2. Classified Claims ........ 18

ARTICLE VI EFFECTUATION AND IMPLEMENTATION OF PLAN ........ 25

A. Implementation of the Plan ........ 25

B. Corporate Action ........ 26

C. Management of the Reorganized Debtors 26

D. Exemption From Transfer Taxes 27

E. Miscellaneous 28

ARTICLE VII PLAN MONITOR 28

A. Appointment of the Plan Monitor. 28

B. Resignation or Death of the Plan Monitor. 28

C. Appointment of a Replacement Plan Monitor. 28

D. Role and Authority 29

E. Verification of Payments. 29

F. Reporting Obligations. 29

G. Compensation and Expenses 29

H. Duration and Termination. 30

I. Dispute Resolution. 30

J. Plan Monitor Approval for Relief in the Bankruptcy Court. 30

ARTICLE VIII EXCULPATION, INJUNCTION AND RELEASES 30

A. Exculpation, Injunction and Releases 30

1. Exculpation and Limitation of Liability 30

2. General Injunction 31

3. Releases by the Debtors. 32

4. Preservation and Prosecution of Litigation Claims 32

ARTICLE IX EXECUTORY CONTRACTS AND LEASES 34

A. Assumption or Rejection of Executory Contracts and Unexpired Leases 34

1. Assumption of Executory Contracts and Unexpired Leases 34

2. Rejection of Executory Contracts and Unexpired Leases 34

3. Inclusiveness 35

4. Cure of Defaults 35

5. Rejection Claims Bar Date .......... 35

ARTICLE X DISTRIBUTIONS .......... 36

A. Distributions by the Reorganized Debtors .......... 36

B. Determination of Claims .......... 36

C. Delivery of Distributions in General .......... 37

D. Cash Payments .......... 37

E. No Interest on Claims .......... 37

F. No De Minimus Distributions .......... 38

G. Face Amount .......... 38

H. Failure to Negotiate Checks .......... 38

I. Unclaimed Distributions .......... 38

J. No Payment or Distribution Pending Allowance .......... 39

K. Disputed Distributions .......... 39

L. Estimation of Disputed Claims .......... 39

M. Resolution of Disputed Claims and Interests .......... 39

N. Distributions in Complete Satisfaction .......... 39

O. Taxpayer Identification Number .......... 40

P. Discharge .......... 40

Q. Compliance with Tax Requirements .......... 40

ARTICLE XI CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .......... 40

A. Conditions Precedent .......... 40

B. Waiver .......... 41

ARTICLE XII CRAMDOWN ........ 41
ARTICLE XIII EFFECT OF CONFIRMATION ........ 41
ARTICLE XIV AMENDMENT AND MODIFICATION ........ 42
ARTICLE XV REVOCATION ........ 42
ARTICLE XVI RETENTION OF JURISDICTION ........ 43
ARTICLE XVII MISCELLANEOUS PROVISIONS ........ 45

A. Substantial Consummation of Plan ........ 45

B. Confirmation Order Controls ........ 45

C. Section 1125(e) Good Faith Compliance ........ 45

D. Headings ........ 45

E. Successors and Assigns ........ 45

F. Notices ........ 45

G. Binding Effect of Plan ........ 45

H. Final Order ........ 46

I. Business Days ........ 46

J. Severability of Plan Provisions ........ 46

K. Governing Law ........ 46

L. Filing of Additional Documents ........ 46

M. Time ........ 46

N. No Attorney Fees ........ 47

O. Preservation of Rights of Setoff ........ 47

P. Defenses with Respect to Unimpaired Claims ........ 47

Q. No Injunctive Relief ........ 47

R. No Admissions ........ 47

S. Entire Agreement ........ 47

T. Service of Documents ........ 47

**EXHIBITS**

Exhibit A – Rejected Contracts

# INTRODUCTION

On December 16, 2025 (the "Holding Petition Date"), Smart Communications Holding, Inc. ("Smart Holding") filed a voluntary petition in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") for relief under Chapter 11, subchapter V, of Title 11 of the United States Code (the "Bankruptcy Code"), commencing Case No. 8:25-bk-09473-RCT (the "Smart Holding Case"). Thereafter, Smart Holding filed an amended voluntary petition to remove the subchapter V designation. See ECF No. 51. On January 8, 2026 (the "Collier Petition Date"), Smart Communications Collier, Inc. ("Smart Collier") filed a voluntary petition in the Bankruptcy Court for relief under Chapter 11 of the Bankruptcy Code, commencing Case No. 8:26-bk-00146-RCT (the "Smart Collier Case").

Since the filings, the Debtors have operated as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. These jointly administered Chapter 11 Cases are pending before the Honorable Roberta A. Colton, in the United States Bankruptcy Court for the Middle District of Florida, located in Tampa, Florida and are jointly administered by Order of the Bankruptcy Court under Smart Communications Holding, Inc., Case No. 8:25-bk-09473-RCT [ECF No. 61]. The Debtors, by and through their undersigned counsel, hereby submit this Joint Chapter 11 Plan of Reorganization of the Debtors (the "Plan") pursuant to Section 1121 of the United States Bankruptcy Code.

For a discussion of the Debtors' history, business, operations, assets and liabilities, for a summary and analysis of the Plan, preservation of Litigation Claims, risk factors, liquidation analysis, tax implications and alternatives to the Plan, reference should be made to the Disclosure Statement for Joint Chapter 11 Plan of Reorganization, dated October 9, 2026, as such Disclosure Statement may be amended, modified or supplemented (the "Disclosure Statement").

**ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE HEREON ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO CONFIRMATION OF THE PLAN OR ITS SUBSTANTIAL CONSUMMATION.**

# ARTICLE I
# DEFINITIONS

## A. Scope of Definitions.

For purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and designated with the initial letter of each word being capitalized and, unless otherwise indicated, the singular shall include the plural, the plural shall include the singular and capitalized terms shall refer to the terms as defined in this Article.

1. "**Additional Salary**" shall mean those certain payments to be made to Jonathan Logan, in addition his base salary, in an amount equal to 20% of the Unrestricted Cash, which payments shall commence on the date that is thirty (30) days after all Allowed General Unsecured Claims and all Allowed Claims in Classes 3, 4, 5 and 6 have been paid in full, reserved, or otherwise resolved pursuant to the terms of this Plan and shall continue on a quarterly basis thereafter on the date that is thirty (30) days after the end of each subsequent calendar quarter.

2. "**Adjusted Net Sales**" shall mean the Total Sales of the Reorganized Debtors minus the Facility Commissions listed under Costs of Goods Sold, in each case as set forth in the Cash Flow Projections attached as Exhibit 3 to the Disclosure Statement.

3. "**Administrative Claim**" shall mean a Claim against the Estates of the Debtors allowed by order of the Bankruptcy Court pursuant to Section 503(b) and entitled to priority under Section 507(a)(1) or 507(b) of the Bankruptcy Code, including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' Estates and of operating the business of the Debtors; (ii) any payment to be made under this Plan to cure a default on an executory contract or unexpired lease that is assumed pursuant to Section 365 of the Bankruptcy Code, (iii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in the ordinary course of business, (iv) any Professional Fee Claim, (v) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court, and (vi) all fees and charges assessed against the Debtors' Estates pursuant to 28 U.S.C. '1930(a).

4. "**Administrative Claims Bar Date**" shall mean the last date to request allowance and payment of Administrative Claims, as set by order of the Bankruptcy Court, other than with respect to (a) Professional Fee Claims or other Persons requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including any compensation requested by any professional or any other Person for making a substantial contribution in the Chapter 11 Cases), and (b) liabilities incurred by the Debtors in the ordinary course of business after the Administrative Claims Bar Date but before the Effective Date.

5. "**Affiliate**" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

6. "**Allowed Administrative Claim**" shall mean all or that portion of an Administrative Claim which has been allowed by a Final Order of the Bankruptcy Court.

7. "**Allowed Claim**" shall mean a Claim: (a) (i) proof of which was timely and properly filed on or before the Bar Date or the Administrative Claims Bar Date, as applicable, (ii) proof of which was deemed filed pursuant to Section 1111(a) of the Bankruptcy Code, or (iii) if no such proof was filed or deemed filed, such Claim has been or hereafter is listed by the Debtors on their Schedules filed under Section 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent and, in any case, as to which (A) no objection to the allowance thereof has been or is interposed, or (B) any such objection has been settled, withdrawn or determined by a Final Order, (b) based on an application of a Professional under Section 330, Section 331, or Section 503 of the Bankruptcy Code for allowance of compensation and reimbursement of

expenses in the Chapter 11 Cases, to the extent such application is approved by a Final Order; or (c) expressly allowed under this Plan or the Confirmation Order. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Claim" shall not include interest on such Claim for the period from and after the Petition Date.

8. "**Allowed Interest**" shall mean an Interest which has been allowed by a Final Order of the Bankruptcy Court.

9. "**Allowed Priority Claim**" shall mean a Priority Claim which has been allowed by a Final Order of the Bankruptcy Court.

10. "**Allowed General Unsecured Claim**" shall mean a General Unsecured Claim which has been allowed by a Final Order of the Bankruptcy Court.

11. "**Assets**" shall mean all property of the Estates under Section 541 of the Bankruptcy Code, including, without limitation, all legal or equitable interests of the Debtors in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, inventory, materials, supplies, furniture, fixtures equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Litigation Claims and any other general intangibles, and the proceeds, product, offspring, rents or profits thereof.

12. "**Assumed Contracts**" shall have the meaning set forth in Article IX below.

13. "**Avoidance Actions**" shall mean a Litigation Claim which any of the Debtors or Reorganized Debtors may assert under Chapter 5 of the Bankruptcy Code, including without limitation under Sections 542, 543, 544, 547, 548, 549, 550, or 553 of the Bankruptcy Code, or applicable state law.

14. "**Ballot**" shall mean the ballot accompanying the Disclosure Statement upon which holders of impaired Claims entitled to vote on this Plan shall indicate their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

15. "**Bankruptcy Code**" shall mean Title 11 of the United States Code, 11 U.S.C. Section 101, et. seq., in effect as of the Petition Date, together with all amendments and modifications thereto to the extent applicable to these Chapter 11 Cases.

16. "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Middle District of Florida or such other court as may hereafter have jurisdiction over this proceeding.

17. "**Bankruptcy Rules**" shall mean (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of title 28 of the United States Code, (b) the Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of title 28 of the United States Code, (c) the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with

all amendments and modifications thereto to the extent applicable to these Chapter 11 Cases or proceedings herein, as the case may be.

18. "**Business Day**" shall mean any day other than a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

19. "**Cash**" shall mean money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

20. "**Cash Flow Projections**" shall mean those certain Cash Flow Projections and supporting assumptions attached as Exhibit 3 to the Disclosure Statement, which Cash Flow Projections form the basis for the payments proposed to made under this Plan.

21. "**Chapter 11 Cases**" shall mean, collectively, the proceedings under Chapter 11 of the Bankruptcy Code for the reorganization of the Debtors, which were initially commenced on December 16, 2025, in the Bankruptcy Court in the Middle District of Florida, Tampa Division and are jointly administered under Smart Communications Holding, Inc., Case No. 8:25-bk-09473-RCT.

22. "**Claim**" shall mean any claim, as that term is defined in Section 101(5) of the Bankruptcy Code, including, without limitation, any claim of right to payment, liquidated, unliquidated, contingent, matured, unmatured, disputed or undisputed, legal, equitable, secured or unsecured.

23. "**Claimant**" shall mean any Person who asserts a Claim in these Chapter 11 Cases.

24. "**Claim Objection Deadline**" shall mean the date set by order of the Bankruptcy Court (without notice or hearing) for objecting to Claims against the Estates.

25. "**Class**" or "**Classe**s" shall mean each class or classes of creditors or holders of Interests classified under the Plan pursuant to Section 1122 of the Bankruptcy Code.

26. "**Confirmation**" shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code.

27. "**Confirmation Date**" shall mean the date on which the Confirmation Order is entered on the computerized docket maintained by the clerk of the Bankruptcy Court.

28. "**Confirmation Hearing**" shall mean the hearing conducted by the Bankruptcy Court under Section 1128 of the Bankruptcy Code wherein the Bankruptcy Court shall consider confirmation of this Plan, in accordance with Section 1129 of the Bankruptcy Code, as the same may be continued from time to time.

29. "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

30. "**Cure Claim**" shall mean any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by any Debtor pursuant

to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non-monetary), arising from, relating to or in connection with the assumption by any Debtor of any Assumed Contract (provided such Claim is filed with the Bankruptcy Court by the Cure Claim Submission Deadline). In no event shall any Claim set out in a Proof of Claim be deemed to be a Cure Claim.

31. "**Cure Claim Submission Deadline**" shall mean and shall occur on the same day as the Voting Deadline.

32. "**Debtors**" shall mean, collectively, (i) Smart Communications Holding, Inc., and (ii) Smart Communications Collier, Inc.

33. "**Disclosure Statement**" shall mean the Disclosure Statement and exhibits thereto that relate to this Plan and prepared pursuant to Section 1125 of the Bankruptcy Code, as amended, modified or supplemented from time to time, which has been approved by the Bankruptcy Court and which is distributed to holders of Claims and Interests with this Plan.

34. **"Disclosure Statement Approval Order**" shall mean that certain order of the Bankruptcy Court dated __________, 2026 [ECF No. __] conditionally approving, among other things, the Disclosure Statement as containing adequate information pursuant to Section 1125 of the Bankruptcy Code and setting various deadlines in connection with Confirmation of the Plan.

35. "**Disputed Claim**" shall mean all Claims: (a) which are listed in the Schedules as disputed, contingent or unliquidated or (b) as to which (i) a proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn) by any party in interest, and (iii) no Final Order has been entered thereon. In the event that any part of a Claim is disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless a Final Order has been entered allowing such Claim. Without limiting any of the above, a Claim that is the subject of a pending objection, motion, complaint, counterclaim, setoff, avoidance action, Litigation Claim or other defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed to constitute a Disputed Claim.

36. "**Disputed Claims Reserve**" means the reserve created for holders of Claims in Class 3, Class 5, Class 7 and Class 8, as applicable, pursuant to Article X herein, whether in a separate reserve account or on the books and records of the Reorganized Debtors.

37. "**Disputed Priority Tax Claims Reserve**" means the reserve for Disputed Priority Tax Claims, created pursuant to Article X herein, whether in a separate reserve account or on the books and records of the Reorganized Debtors.

38. "**Disallowed Claim**" shall mean any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

39. "**Distribution**" shall mean each distribution of Cash to holders of Allowed Claims pursuant to and in accordance with the terms of this Plan by the Reorganized Debtors which shall occur as provided for herein on and after the Effective Date.

40. "**Distribution Date**" shall mean the date each Distribution is made pursuant to the terms of the Plan by the Reorganized Debtors, provided that with respect to Disputed Claims, no Distribution shall be made until a Final Order is entered allowing such Claim.

41. "**Effective Date**" shall mean the date which is fifteen (15) days after the date the Confirmation Order is entered on the Bankruptcy Court's computerized docket by the clerk of the Bankruptcy Court, or the first Business Day thereafter.

42. "**Estates**" shall mean, collectively, the bankruptcy estates of the Debtors created under and pursuant to Section 541 of the Bankruptcy Code on the Petition Date.

43. "**Exclusive License Agreement**" shall mean that certain exclusive license agreement to be entered into as of the Effective Date by and among HLFIP and the Reorganized Debtors for the HLFIP Exclusive License, the terms of which shall be mutually acceptable to HLFIP and the Reorganized Debtors. A copy of the Exclusive License Agreement will be filed with and included in the Plan Supplement.

44. "**Executory Contracts**" shall mean all contracts, oral or written, to which any Debtor is a party, and which are executory within the meaning of Section 365 of the Bankruptcy Code.

45. "**Final Order**" shall mean an order or judgment of a court of competent jurisdiction which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof has expired; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order or judgment; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered, provided however that with respect to an order or judgment of the allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable. Provided further that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules or relevant Rules of Civil Procedure, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

46. "**Financing Reserve**" shall mean the reserve created by the Reorganized Debtors into which the Reorganized Debtors shall deposit Cash from time to time under the Plan and the Cash Flow Projections and held in a segregated account in the name of one or more of the Reorganized Debtors in order to enable the Reorganized Debtors to reduce or eliminate the need for third-party financing in connection with the acquisition of equipment and payment of contractor services necessary to continue the Reorganized Debtors' operations and servicing of the Reorganized Debtors' customers.

47. "**General Unsecured Claim**" shall mean any Claim against the Debtors' Estates, but not including an Administrative Claim, a Priority Claim, a Secured Claim, a Priority Tax Claim, a Claim in Class 2, 3, 4, 5, 6, 8 or 9, or a Late Filed Claim.

48. "**HLFIP**" shall mean HLFIP Holding, LLC.

49. "**HLFIP Exclusive License**" shall mean the new exclusive license to be issued by HLFIP to the Reorganized Debtors for the Reorganized Debtors to use intellectual property owned

by HLFIP as set forth in and pursuant to the terms of the Exclusive License Agreement that shall become effective as of the Effective Date of the Plan.

50. "**HLFIP License Fees**" shall mean the license fees payable by the Reorganized Debtors to HLFIP under the Exclusive License Agreement in exchange for the HLFIP Exclusive License. The material terms of the Exclusive License Agreement shall include a license fee payable by the Reorganized Debtors in an amount equal to 5.5% of the Royalty Base (as defined below) for each calendar quarter after the Effective Date, which shall be due and payable on or before the fifteenth (15th) day following the end of the applicable calendar quarter. Beginning on the date that is thirty (30) days after all Allowed General Unsecured Claims and all Allowed Claims in Casses 3, 4, 5 and 6 have been paid in full, reserved, or otherwise resolved, the license fee due under the Exclusive License Agreement shall increase to 8.5% of the Royalty Base. In addition, from and after the date the Allowed Trust Claim Amount has been reduced by 50% through the Redemption Payments, the license fee due under the Exclusive License Agreement shall increase to 10.5% of the Royalty Base. For all purposes hereunder, the "Royalty Base" shall be equal to 75% of the Reorganized Debtors' Adjusted Net Sales from operations following the Effective Date.

51. "**Holder**" shall mean the holder of a Claim or Equity Interest under the Plan.

52. "**Impairment**" or "**Impaired**" shall have the meaning under Section 1124 of the Bankruptcy Code.

53. "**Insider**" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

54. "**Interest**" or "**Equity Interest**" shall mean any "equity security" interest in the Debtors, as the term is defined in Section 101(16) of the Bankruptcy Code, exclusive of any such interests held in treasury by the Debtors, which Interests are identified in the Schedules filed by the Debtors in these Chapter 11 Cases and/or registered in the stock registers maintained by or on behalf of the Debtors, and as to which Interest no objection has been made or which Interest has been allowed by a Final Order.

55. "**Janice Logan**" shall mean Janice Logan, as Trustee of the James Logan Family Trust dated February 10, 2021.

56. "**Jonathan Logan**" shall mean Jonathan D. Logan.

57. "**Late-Filed Claim**" shall mean a Claim which is filed after the Bar Date.

58. "**Lien**" shall mean any valid and undisputed mortgage, lien, charge, security interest, encumbrance or other security device of any kind affecting any Asset of the Debtors or the Debtors' Estates.

59. "**Litigation Claims**" shall mean any and all Claims, Objections, choses in action, causes of action suits, appeals, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent,

matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtors or the Estates, whether arising before or after the Petition Date, including without limitation, those which are: (i) property of the Estates of the Debtors under and pursuant to Section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) Avoidance Actions; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under Section 506(c) of the Bankruptcy Code; (vii) for subordination under Section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) for professional malpractice against professionals employed by the Debtors; (xi) against any and all current and/or former officers and directors of the Debtors, including for breach of fiduciary duty; (xii) under and pursuant to any policies of insurance maintained by the Debtors, including without limitation, the directors and officers liability insurance policy; (xiii) for theft of corporate opportunity; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; (xvii) for lender liability against any lender of the Debtors, including but not limited to claims against any such lender for exerting excessive or unreasonable control over the Debtors, for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, for any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, or any cause of action or defense based on the negligence of such lender, for any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing; and (xviii) to the extent not otherwise set forth above, as described in the Disclosure Statement, including but not limited to, the State Court Actions and any appeals therefrom, and any and all claims and causes of action against the Trust, Janice Logan, Alexis Logan and/or Justin Peterson.

60. "**Loco**" shall mean Loco Florida, LLC, the Debtors' landlord.

61. "**Monthly Operating Reports**" shall mean the monthly financial reports filed by the Debtors during these Chapter 11 Cases.

62. "**Net Cash Flow**" shall mean the Cash available, after the payment of or accounting for Costs of Goods Sold, all Operating Expenses, Other Cash Items and Other Cash Sources/(Uses), in each case as provided for in the Cash Flow Projections attached as Exhibit 3 to the Disclosure Statement. The Net Cash Flow is reflected as a separate line item in the Cash Flow Projections.

63. "**Objection**" shall mean any objection, application, motion, complaint or any other legal proceeding, including, with respect to the terms of this Plan, seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate

or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) or Interest other than an Allowed Claim or an Interest.

64. "**Person**" shall mean an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

65. "**Petition Date**" shall mean December 16, 2025, the date the first Chapter 11 Case was commenced.

66. "**Plan**" shall mean this joint plan of reorganization in its entirety, together with all addenda, exhibits and schedules in its present form or as it may be modified, amended or supplemented from time to time.

67. "**Plan Monitor**" shall mean Joseph J. Luzinski, who is the individual appointed pursuant to Article VII of the Plan to monitor the Reorganized Debtors' compliance with the terms of the Plan following the Effective Date.

68. **"Plan Supplement"** means the compilation of documents, exhibits, and other materials to be filed by the Debtors in connection with the Plan, as the same may be amended, modified, supplemented, or replaced from time to time in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any applicable order of the Bankruptcy Court, including, as applicable, documents necessary or appropriate to implement or effectuate the Plan. All documents included in the Plan Supplement shall be deemed incorporated into and made a part of the Plan as if set forth therein in full. The Debtors reserve the right, subject to the terms of the Plan and any applicable order of the Bankruptcy Court, to alter, amend, modify, supplement, or replace any document contained in the Plan Supplement through and including the Effective Date. The Debtors will file the Plan Supplement five (5) business days before the deadline to object to Confirmation of the Plan.

69. "**Priority Claim**" shall mean a Claim entitled to priority under Section 507(a) (3)-(7) and (9) of the Bankruptcy Code.

70. "**Priority Tax Claim**" shall mean a Claim entitled to priority under Section 507(a) (8) of the Bankruptcy Code.

71. "**Professionals**" shall mean a Person (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with Sections 327, 363 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b) (4) of the Bankruptcy Code.

72. "**Professional Fee Claims**" shall mean Administrative Claims related to compensation of Professionals and reimbursement of expenses incurred by such Professionals on behalf of the Debtors, pursuant to sections 105(a), 330, 331, 363(b) 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Bankruptcy Code.

73. “**Pro Rata**” shall mean the proportion (expressed as a percentage) that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims (including Disputed Claims but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

74. “**Redemption Payments**” shall mean the periodic payments proposed to be made to the Trust on account of the Allowed Trust Claim Amount as set forth and defined in Class 8 of the Plan.

75. “**Rejected Contracts**” shall have the meaning set forth in Article IX below.

76. “**Rejection Claim**” shall mean a Claim arising under Section 502(g) of the Bankruptcy Code from the rejection under Section 365 of the Bankruptcy Code, or under this Plan, of an Executory Contract or unexpired lease which the Debtors have not assumed.

77. “**Rejection Claims Bar Date**” shall have the meaning set forth in Article IX below.

78. “**Released Parties**” shall have the meaning in Article VIII of the Plan

79. “**Reorganized Debtors**” shall mean Smart Communications Holding, Inc. and Smart Communications Collier, Inc.

80. “**Reorganized Debtors Asset**s” shall mean all Assets transferred to and vested in the Reorganized Debtors pursuant to this Plan.

81. “**Sarasota House**” shall mean the real property located at 1660 Ranch Club Blvd., Sarasota, Florida.

82. “**Schedules**” shall mean the Schedules and Statement of Financial Affairs filed by the Debtors pursuant to Sections 521(1) and 1106(a) (2) of the Bankruptcy Code, as amended and supplemented.

83. “**Secured Claim**” shall mean a Claim which, as of the Effective Date of the Plan and, if necessary, pursuant to a valuation by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, is secured by a valid, enforceable and perfected mortgage, lien, security interest or other encumbrance of any kind against Assets of the Estates, and which is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, provided however, that the amount of any Secured Claim shall not exceed the value of the Assets securing such Secured Claim pursuant to section 506(a) of the Bankruptcy Code.

84. “**Smart Holding Bar Date**” shall mean February 24, 2026, the last date for creditors and holders of Interests to file proofs of Claims or Interests in the Smart Holding Chapter 11 Case, provided however that with respect to governmental units, the Bar Date is June 14, 2026.

85. “**Smart Collier Bar Date**” shall mean March 19, 2026, the last date for creditors and holders of Interests to file proofs of Claims or Interests in the Smart Collier Chapter 11 Case, provided however that with respect to governmental units, the Bar Date is July 7, 2026.

86. "**State Court Action**" shall mean the litigation is pending in the Circuit Court of the Twelfth Judicial Circuit in Sarasota County, Florida, styled Jonathan Logan and Smart Communications Holding, Inc. v. Janice Logan, individually and as Trustee of the James Logan Family Trust, dated February 10, 2021, the Estate of James Logan, Justin Peterson, Alexis Logan, and Unnamed Curator, Case No. 2023-CA-1002-NC (consolidated with Case No. 2023-CA-1280-NC), including any appeals therefrom.

87. "**Tierra Verde House**" shall mean the real property located at 788 Columbus Drive, Tierra Verde, Florida.

88. "**Trust**" shall mean the James Logan Family Trust dated February 10, 2021.

89. "**Trust Claim Amount**" shall mean the total amount due to the Trust arising from the State Court Action, the allowed amount for which has been set by a Final Order, or pursuant to an agreement reached between the Trust and the Reorganized Debtors.

90. "**Unrestricted Cash**" shall mean for each calendar quarter during the term of the Plan, the amount (determined on a cash basis) by which the Total Sales of the Reorganized Debtors during such calendar quarter exceeds the aggregate of the following payments made by the Reorganized Debtors during such calendar quarter: (i) Costs of Good Sold; (ii) Operating Expenses; (iii) Other Cash Items, including Income Taxes; (iv) Other Cash Sources/(Uses), (v) funding of the Financing Reserve and any replenishment of the Financing Reserve, and (vi) payments required to be made under the Plan to holders of Allowed Claims in Classes 1 through 7, in each case as set forth in the Cash Flow Projections. The Unrestricted Cash is reflected as a separate line item in the Cash Flow Projections.

91. "**Unclaimed Property**" shall mean any distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to this Plan that (a) is returned to the Reorganized Debtors as undeliverable and no appropriate forwarding address is received within the later of (i) 90 days after the Effective Date and (ii) 90 days after such attempted Distribution by the Reorganized Debtors are made to such holder or (b) in the case of a distribution made in the form of a check, is not negotiated within 90 days and no request for re-issuance is made. Except as provided in the Plan, Unclaimed Property shall be retained by the Reorganized Debtors and a holder waives all rights with respect thereto.

92. "**Venable**" shall mean Venable LLP, the Debtors' court-approved general bankruptcy counsel.

93. "**Voting Deadline**" shall mean the deadline to file Ballots in respect of the Plan as set by the Court in the Disclosure Statement Approval Order.

**B. Rules of Interpretation**.

Any term used but not defined herein shall have the meaning given to it by the Bankruptcy Code or the Bankruptcy Rules, if used therein. The words "herein", "hereof", "hereunder" and other words of similar import refer to this Plan as a whole, not to a particular section, subsection, paragraph, subparagraph or clause, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular

and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter. All captions and headings to articles and paragraphs of the Plan are inserted for convenience and reference only and are not intended to be a part or to affect the interpretation of the Plan. Any rules of construction set forth in Section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order. In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of the Bankruptcy Rule 9006(a) shall apply.

**C. Exhibits.**

All exhibits and schedules, if any, to the Plan are incorporated and are part of the Plan as if set forth herein. Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtors' counsel by a written request sent to the following address:

**VENABLE LLP**
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: 305.349.2300
Attn: Paul J. Battista, Esq., pbattista@venable.com
Attn: Eric D. Jacobs, Esq., ejacobs@venable.com

## ARTICLE II
## LIMITED SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

**A. Limited and Procedural Substantive Consolidation for Purposes of Voting on, Confirmation of, and Distribution Purposes.**

The Debtors seek, simultaneously and in connection with confirmation of this Plan, to substantively consolidate the Debtors on a limited basis solely for classification of Claims and Interests, voting on, Confirmation of, and Distributions under one Plan.

The Plan treats the Debtors as comprising a single Estate solely for the purposes of classification of Claims and Interests, voting on the Plan, confirmation of the Plan, and making Distributions under the Plan with respect to Allowed Claims against and Allowed Interests in the Debtors. Such treatment shall not affect any Debtors' status as a separate legal entities, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, cause the transfer of any assets, nor result in the substantive consolidation of the Debtors; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities. Such treatment shall also not affect any Litigation Claim available to any Debtor or the Debtors' estates. The above-described treatment serves only as a procedural mechanism to affect a fair distribution of value to the creditors.

As described herein, the entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code,

effective as of the Effective Date, of the limited or partial consolidation of the Debtors, and their respective Estates solely for purposes of classification of Claims, Voting on, Confirmation of and Distributions under the Plan. Specifically, on and after the Effective Date with respect to each of the Debtors, (a) all assets and liabilities of the Debtors shall be treated as though they were pooled solely for purposes of classification of Claims, voting on, Confirmation of and Distributions under the Plan; (b) all Claims shall be entitled to a single recovery, and thus one Distribution (and no multiple recovery) on any such Claims, and (c) every Claim filed or to be filed in the Chapter 11 Case of any Debtor shall be deemed filed against all of the Debtors and shall be one Claim against and one obligation of the Debtors. In addition, notwithstanding any provision hereof to the contrary, any holder of a Claim with multiple Allowed Claims against more than one Debtor that arise from the contractual joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances, may not receive, in the aggregate, from all Debtors, more than 100% of the amount of the underlying Claim giving rise to such multiple Claims.

The Plan shall be deemed to be a motion by the Debtors for limited and partial substantive consolidation with respect to the Plan as set forth herein. The Debtors reserve the right to supplement the facts and law supporting the request for partial or limited substantive consolidation herein on or before the Confirmation Date. Any objection by an affected Creditor to such consolidation shall be treated as an objection to Confirmation and shall be determined by the Bankruptcy Court at the Confirmation Hearing. Failure to timely object to such limited substantive consolidation as may result in the Bankruptcy Court granting such limited consolidation of the Debtors in accordance herewith, without further hearing.

The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to Sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the limited substantive consolidation solely for purposes of classification, voting, Confirmation, and Distributions hereunder, and for no other purpose, as set forth above.

### B. Treatment of Guaranty Claims Against a Debtor.

Any holder of a Claim against a Debtor and a Claim based on a guaranty of such base Claim given by a Debtor shall receive only a single recovery in respect of such Claims.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEES FEES

### A. Generally.

The treatment of and consideration to be received by holders of Allowed Claims and the treatment of Interests pursuant to this Article III shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims against, or Interest in the Debtors and the Debtors' Estate, except as otherwise expressly provided in this Plan or the Confirmation Order.

**B. Treatment**.

The following Administrative Claims, Priority Tax Claims and United States Trustee's Fees are not Impaired under the Plan and will be treated as follows:

**1. Administrative Claims**. Each holder of an Allowed Administrative Claim against the Estate (with the exception of the Professionals employed pursuant to Sections 327, 503(b)(3) and (4) and 1102 of the Code, shall be paid 100% of the allowed Administrative Claim in Cash, unless otherwise ordered by the Bankruptcy Court, on the later of (i) the Effective Date, or as soon thereafter as reasonably practicable, or (ii) as soon as practicable after the date of a Final Order Allowing such Administrative Claim, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

(a) **Landlord Administrative Claims.**

The Debtor's landlord, Loco, has asserted an Administrative Claim in the amount of $376,744.00, for post-petition rent incurred between the Collier Petition Date and the December 31, 2026. Loco's Administrative Claim shall be allowed in the amount of $376,744.00, plus $32,000.00 per month from January 1, 2027, through the Effective Date.

Loco's Administrative Claim shall be paid by Reorganized Debtors (a) upon the Effective Date, or (b) under such other terms as may be agreed upon by both Loco and the Reorganized Debtors, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

(b) **Officer Salary Administrative Claims.**

The Debtors' sole officer, Jonathan Logan, has asserted an Administrative Claim in the amount of $486,666.67, for post-petition salary incurred between the Collier Petition Date and September 1, 2026. In partial exchange for the treatment provided to Jonathan Logan under the Plan, Jonathan Logan's Officer Salary Administrative Claim shall be waived by agreement with Jonathan Logan.

(c) **Yacht Administrative Claims.**

Smart Communications Yacht Holding, LLC ("Yacht Holding") has asserted an Administrative Claim against the Debtors related to the loss of value of the Riva Corsaro 100' yacht (the "Corsaro"). Yacht Holding asserts that the Debtors' failure to make agreed-upon lease payments for the use of the Corsaro put Yacht Holding on an unavoidable path to default under its third-party financing arrangement, which financing was secured by a perfected lien on the Corsaro. As a result, Yacht Holding asserts that it was forced to "fire sale" the Corsaro in order to avoid a complete loss and possibly additional damages, and thereby asserts that it lost of millions of dollars in equity in the Corsaro. Conversely, the Debtors assert claims for unjust enrichment against Yacht Holding for the down payment of the Corsaro and monthly payments for the use of the Corsaro in excess of any value received from such use.

In settlement of these competing claims, and to avoid the further expenditure of funds in litigation costs, including from Yacht Holding's appeal of the State Court Action, Yacht Holding has agreed to wind down as a matter of corporate law. As part of the wind-down, Yacht Holding

shall pay any debts it is required to pay pursuant to F.S. 605.0709. Any funds still remaining after the wind-down shall be transferred to the Reorganized Debtors to fund the Financing Reserve under the Plan. The Debtors estimate that the amount to be transferred to the Reorganized Debtors will be approximately $1,100,000 as of the Effective Date.

(d) **HLFIP Administrative Claim.**

HLFIP, as the owner of the intellectual property used by the Debtors, has asserted an Administrative Claim for post-petition license fees incurred between the Holding Petition Date and the Effective Date. Based on a 5.5% royalty rate applied to the Royalty Base, the Debtors estimate that HLFIP will seek an Administrative Claim in the amount of $4,009,757. On the Effective Date, the Debtors will reserve the amount of $4,009,757 for the payment of HLFIP's Administrative Claim, until such time HLFIP's Administrative Claim becomes an Allowed Administrative Claim.

The Allowed HLFIP's Administrative Claim shall be paid by the Reorganized Debtors upon the later of (a) upon the Effective Date; (b) under such other terms as may be agreed upon by both HLFIP and the Reorganized Debtors, as the case may be; (c) the date upon which HLFIP's Administrative Claim becomes Allowed; or (d) as otherwise ordered by a Final Order of the Bankruptcy Court.

(e) **Professional Fee Claims.**

Professional Fee Claims are Administrative Claims related to compensation of Professionals and reimbursement of expenses incurred by such Professionals on behalf of the Debtors, pursuant to sections 105(a), 330, 331, 363(b) 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Bankruptcy Code (the "Professional Fee Claims"). All payments to Professionals for Professional Fee Claims will be made in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses. All applications for compensation for services rendered and reimbursement of expenses are subject to approval of the Bankruptcy Court.

Each holder of a Professional Fee Claim will (i) file its final application for the allowance of compensation for services rendered and reimbursement of expenses incurred by no later than the date fixed by the Bankruptcy Court, and (ii) if granted by the Bankruptcy Court, be paid 100% of their Allowed Professional Fee Claim in Cash upon (a) the date of a Final Order allowing such Professional Fee Claim, or (b) upon such other dates and terms as may be agreed upon by the holder of any such Allowed Professional Fee Claim and the Debtors or the Reorganized Debtors, as applicable.

**2. Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim under Section 507(a)(8) of the Code shall be paid 100% of such Allowed Priority Tax Claim, with interest at the federal judgment rate, in Cash. Based upon the Schedules and the proofs of claims filed to date in these Chapter 11 Cases, a total of five Priority Tax Claim have been filed, which total $47,636.00. These five Priority Tax

Claims, which are not subject to objection by the Debtors, shall be paid in full on the Effective Date.

Notwithstanding the above, based on the Debtors' expected filing of amended tax returns for prior years, the Debtors expect that the IRS and the State of Florida will assert Priority Tax Claims against the Debtors in an amount estimated to be between $1,500,000.00 and $5,000,000.00, including interest (at the current federal judgment interest rate) and penalties (the "Additional Tax Claims"). If and to the extent the Additional Tax Claims are allowed, then they will be paid (i) first, in the amount of $75,000.00 per month from and after the Effective Date until the date the Financing Reserve has been funded in the amount of $5,000,000.00; then based on the available Net Cash Flow, payable on a monthly basis, but in no event not to exceed a period five years from the Petition Date; or (ii) such other dates and upon such other terms as agreed to by the Debtors or the Reorganized Debtors (as the case may be) and the holder of such Allowed Priority Tax Claim. Pending the allowance of the Additional Tax Claims, the Reorganized Debtors shall make Distributions on such Additional Tax Claims into the Disputed Priority Tax Claims Reserve. Until the Additional Tax Claims are Allowed, the Additional Tax Claims will be estimated at $2,000,000.00 for the purpose of funding the Disputed Priority Tax Claims Reserve.

Upon the Additional Tax Claims become Allowed Claims, the funds in the Disputed Priority Tax Claims Reserve shall be used to pay the Allowed Additional Tax Claims. In the event the Allowed Additional Tax Claims are greater than the amount funded to the Disputed Priority Tax Claims Reserve, then the balance of the Allowed Additional Tax Claims shall be paid in accordance with the preceding paragraph. In the event the Allowed Additional Tax Claims are less than the amount funded to the Disputed Priority Tax Claims Reserve, then the balance of the Disputed Priority Tax Claims Reserve not used to pay the Allowed Additional Tax Claims shall be released to the Reorganized Debtor.

**3. United States Trustee's Fees**. The Debtors shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) on the Effective Date, and simultaneously provide to the U.S. Trustee an appropriate affidavit indicating Cash disbursements for all relevant periods; notwithstanding anything contained in the Plan to the contrary, the Reorganized Debtors shall further pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6) until the earlier of the closing of these Chapter 11 Cases by the issuance of a Final Decree by the Bankruptcy Court, or upon entry of an order of this Bankruptcy Court dismissing these Chapter 11 Cases, or converting these Chapter 11 Cases to another chapter under the United States Bankruptcy Code, and the Reorganized Debtors shall provide to the U.S. Trustee, upon the payment of each post-confirmation payment, a quarterly report and appropriate affidavit indicating income and disbursements for the relevant periods. To date, the Debtors have paid all fees due and owing to the Office of the United States Trustee, and the Debtors or Reorganized Debtors, as applicable, anticipate paying all such fees through confirmation of the Plan and thereafter as provided therein.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

**A. Generally.**

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in the Debtors. A Claim or Equity Interest is placed in a particular Class for the purposes of voting on the Plan and of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, or otherwise settled prior to the Effective Date. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in Sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code have not been classified and their treatment is set forth in Article III above.

**B. Classification.**

The treatment of classified Claims and Equity Interests of the Debtors is described in more detail below.

Class 1: Allowed Priority Non-Tax Claims.

Class 2: Loco's Claims

Class 3: HLFIP's Claims

Class 4: Tort Claims

Class 5: Alexis Logan's Claims

Class 6: Justin Peterson's Claims.

Class 7: General Unsecured Claims

Class 8: Trust Claims

Class 9: Jonathan Logan's Claims

Class 10: Equity Interests in Smart Collier

Class 11: Equity Interests in Smart Holding

Classes 2, 3, 4, 5, 6, 7, 8, 9, and 11 are impaired under the Plan. Classes 1 and 10 are not impaired under the Plan. As such, Classes 1 and 10 are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

# ARTICLE V
# TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

## A. The Joint Plan of Reorganization for Smart Communications Holding, Inc. and Smart Communications Collier, Inc.

The Plan provides (i) for the reorganization and emergence of the Debtors from these Chapter 11 Cases as Reorganized Debtors, including through the partial substantive consolidation for purposes of classification of Claims, voting on, Confirmation of and Distributions under the Plan, and (ii) the treatment of Allowed Claims and Allowed Equity Interests as provided in the Plan.

Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of all Claims against and Equity Interests in the Debtors, including any Liens securing any such Claims.

### 1. Unclassified Claims.

Holders of Allowed Administrative Claims, U.S. Trustee Fees, and Allowed Priority Tax Claims shall receive the treatment set forth above.

### 2. Classified Claims.

**Class 1: Allowed Priority Non-Tax Claims.**

Class 1 consists of all Allowed Priority Non-Tax Claims. Each Holder of an Allowed Priority Non-Tax Claim shall receive from the Debtors or the Reorganized Debtors (as the case may be) cash equal to the full amount of its Allowed Priority Non-Tax Claim on the later of: (i) the Effective Date; or (ii) the date of a Final Order allowing such Priority Claim. Class 1 is unimpaired by the Plan. As a result, pursuant to Section 1126(f) of the Bankruptcy Code, each Holder of an Allowed Priority Non-Tax Claim in Class 1 is conclusively deemed to have accepted the Plan and therefore is not entitled to vote to accept or reject the Plan.

**Class 2: Claims of Loco.**

As discussed in Section VI(A) below, on the Effective Date, Loco shall enter into a new lease with the Reorganized Debtors for the use and occupancy of the Premises located at 10491 72nd Street, Seminole, Florida 33777.

Loco asserts a pre-petition claim against the Debtors in the amount of $1,440,000.00 for the use and occupancy of the Premises. See POC 14-1 (the "Loco Claim"). In exchange for a release of any and all claims by the Debtors and Reorganized Debtors against Loco, including claims arising out of the Debtors' purchase of the Premises, Loco agrees to waive any rights to distribution on account of the Loco Claim from the Debtors and Reorganized Debtors, as appropriate.

Class 2 is Impaired. As a result, Loco, as the Holder of an Allowed Class 2 Claim, is entitled to vote to accept or reject the Plan.

**Class 3: Claims of HLFIP.**

As discussed in Section VI(A) below, on the Effective Date, HLFIP shall enter into the Exclusive License Agreement with the Reorganized Debtors whereby HLFIP shall grant to the Reorganized Debtors the HLFIP Exclusive License.

The Exclusive License Agreement shall be effective as of the Effective Date and shall be for a term that will expire on the thirtieth (30th) day subsequent to the completion of all payments required to be made under the Plan. The Exclusive License Agreement may be renewable upon terms mutually acceptable to HLFIP and the Reorganized Debtors to be agreed upon prior to the expiration thereof.

HLFIP asserts a pre-petition claim against the Debtors for the use of HLFIP's intellectual property. *See* POC 15-1 (the "HLFIP Claim"). Based on a 5.5% royalty rate applied to the Royalty Base, the Debtors estimate that HLFIP will seek an unsecured claim in the amount of $5,947,026. Until the HLFIP Claim is Allowed, the HLFIP Claim will be estimated at $5,947,026 for the purpose of funding the Disputed Claims Reserve.

On account of the Allowed HLFIP Claim, HLFIP shall be paid on a quarterly basis in an amount based on the available Net Cash Flow for the calendar quarter in question, which payments shall commence on the date that is thirty (30) days after the end of such calendar quarter, without interest, beginning on the date that is the later of: (i) 120 days after the Effective Date, (ii) thirty (30) days after all Allowed Priority Tax Claims have been paid in full, reserved, or otherwise resolved, (iii) the date of a Final Order allowing the HLFIP Claim, or (iv) the date the Financing Reserve has been funded in the amount of $5,000,000.00. In no event shall the payments made to this Class exceed a period of five years from the Effective Date. Payments made in this Class 3 shall be Pro Rata with payments made in Classes 5, 6 and 7.

Class 3 is Impaired. As a result, the Holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

**Class 4: Allowed Tort Claims.**

Class 4 consists of the Claims of Doreen M. Lindahl (POC 7-1), Timothy W. Webb (POC 8-1), and April Nieto, as Administrator and Personal Representative (POC 30-2) (collectively, the "Tort Claimants"). The Tort Claimants have all asserted claims that are arguably covered by the Debtors' insurance coverage. To the extent a Tort Claimant holds an Allowed Claim against the Debtors, such Tort Claimant shall exclusively seek recovery from the Debtors' insurance coverage. The Tort Claimants shall not be entitled to any distribution from the Reorganized Debtors.

Class 4 is Impaired. As a result, the Holders of an Allowed Class 4 Claim are entitled to vote to accept or reject the Plan.

**Class 5: Claims Asserted by Alexis Logan.**

Class 5 consists of the Claims of Alexis Logan against the Debtors.

The Claims of Alexis Logan are Disputed. Each Holder of an Allowed Class 5 Claim shall receive Cash from the Reorganized Debtors in an amount equal to 100% of the amount of such Allowed Class 5 Claim, which shall be paid on a quarterly basis in an amount based on the available Net Cash Flow for the calendar quarter in question, which payments shall commence on the date that is thirty (30) days after the end of such calendar quarter, without interest, beginning on the date that is the later of: (i) 120 days after the Effective Date, (ii) thirty (30) days after all Allowed Priority Tax Claims have been paid in full, reserved, or otherwise resolved, (iii) the date of a Final Order allowing such Class 5 Claim, or (iv) the date the Financing Reserve has been funded in the amount of $5,000,000.00. In no event shall the payments to this Class exceed a period of five years from the Effective Date. Until the Claims of Alexis Logan are allowed by a Final Order, the Claims of Alexis Logan will be estimated at $412,000.00 for the purpose of funding the Disputed Claims Reserve. Payments made in this Class 5 shall be Pro Rata with payments made in Classes 3, 6 and 7.

Class 5 is Impaired. As a result, the Holder of an Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6: Claims Asserted by Justin Peterson.**

Class 6 consists of the Claims of Justin Peterson against the Debtors.

The Claims of Justin Peterson are Disputed. Each Holder of an Allowed Class 6 Claim shall receive Cash from the Reorganized Debtors in an amount equal to 100% of the amount of such Allowed Class 6 Claim, which shall be paid on a quarterly basis in an amount based on the available Net Cash Flow for the calendar quarter in question, which payments shall commence on the date that is thirty (30) days after the end of such calendar quarter, without interest, beginning on the date that is the later of: (i) 120 days after the Effective Date, (ii) thirty (30) days after all Allowed Priority Tax Claims have been paid in full, reserved, or otherwise resolved, (iii) the date of a Final Order allowing such Claim, or (iv) the date the Financing Reserve has been funded in the amount of $5,000,000.00. In no event shall the payments to this Class exceed a period of five years from the Effective Date. The Debtors estimate this claim at $0.00 and will not fund any reserve for payment to holders of Class 6 Claims. Payments made in this Class 6 shall be Pro Rata with payments made in Classes 3, 5 and 7.

Class 6 is Impaired. As a result, the Holder of an Allowed Class 6 Claim is entitled to vote to accept or reject the Plan.

**Class 7: Allowed General Unsecured Claims.**

Class 7 consists of the General Unsecured Claims, not otherwise classified in the Plan.

Each Holder of an Allowed General Unsecured Claim shall receive Cash from the Reorganized Debtors in an amount equal to 100% of the amount of such Allowed General Unsecured Claim, which shall be paid on a quarterly basis in an amount based on the available Net

Cash Flow for the calendar quarter in question, which payments shall commence on the date that is thirty (30) days after the end of such calendar quarter, without interest, beginning on the date that is the later of: (i) 120 days after the Effective Date, (ii) thirty (30) days after all Allowed Priority Tax Claims have been paid in full, reserved, or otherwise resolved, (iii) the date of a Final Order allowing such General Unsecured Claim, or (iv) the date the Financing Reserve has been funded in the amount of $5,000,000.00. In no event shall the payments to this Class exceed a period of five years from the Effective Date. Until a General Unsecured Claim becomes allowed, the amount asserted in the Debtors' Schedules for the General Unsecured Claim will be the estimated amount for the purpose of funding the Disputed Claims Reserve. Payments made in this Class 7 shall be Pro Rata with payments made in Classes 3, 5 and 6.

Class 7 is Impaired. As a result, the Holders of Allowed Class 7 Claims are entitled to vote to accept or reject the Plan.

**Class 8: Claims Asserted by the Trust.**

The Trust holds a Disputed Claim or a Disputed Interest and shall be subject to the Disputed Claim provisions in Article X of the Plan. The Trust Claim Amount shall exclusively be determined in the State Court Action, including through appeals related thereto. The treatment of the Allowed Trust Claim Amount, including, but not limited to, repayment terms, interest rate, security, and covenants, shall exclusively be determined by the Bankruptcy Court, including pursuant to this Plan. The Allowed Trust Claim Amount shall be reduced by all amounts expended by the Debtors for the benefit of the Sarasota House through the Effective Date that were not already credited against the Trust Claim Amount by the State Court in the State Court Action. The Allowed Trust Claim Amount, after such reduction, shall be satisfied as follows:

i. Payments: Beginning on the date which is later of (i) 120 days after the Effective Date, (ii) thirty (30) days after all Allowed General Unsecured Claims and all Allowed Claims in Classes 3, 4, 5 and 6 have been paid in full, reserved, or otherwise resolved, or (iii) the date of a Final Order allowing the Trust Claim Amount, the Reorganized Debtors shall make an initial Distribution to the Trust by and through the transfer, by quit claim deed, of fee simple title to the Sarasota House (the "Transfer"). Upon such Transfer, the Allowed Trust Claim Amount shall be reduced by an amount equal to $3.1 million (which is an estimate of the fair market value of the Sarasota House), which fair market value will be determined by a third-party appraisal to be obtained by the Reorganized Debtors at the time of the Transfer. The remainder of the Allowed Trust Claim Amount, if any, shall be paid thereafter in quarterly installments in an amount equal to 70% of the Unrestricted Cash (the "Redemption Payment") for the calendar quarter in question, which payments shall commence on the date that is thirty (30) days after the end of the calendar quarter following the quarter in which the Transfer occurs and continuing in arrears on a quarterly basis thereafter, until the Allowed Trust Claim Amount is paid in full.

ii. Rent: From and after the Effective Date, and until such time as the Sarasota House is no longer property of the Reorganized Debtors (including through the Transfer), and while Janice Logan continues to occupy the Sarasota House, the Allowed Trust Claim Amount shall be reduced by (i) an amount equal to $30,000.00 per month in lieu of

rent due from Janice Logan to the Reorganized Debtors, and (ii) the amount of all expenses paid by the Reorganized Debtors for the benefit or upkeep of the Sarasota House. The Reorganized Debtors shall grant Janice a possessory right to live in the Sarasota House, subject to these terms, until the earlier of: (1) the date that Janice vacates the Sarasota House, (2) the Sarasota House is distributed to the Trust pursuant to the Transfer, or (3) it is determined in a Final Order that the Allowed Trust Claim Amount is less than the value of the Sarasota House. In the event Janice vacates the Sarasota House prior to the Transfer, then the Reorganized Debtors shall have the option of marketing and selling the Sarasota House, with the net proceeds thereof being used to pay the Allowed Trust Claim Amount strictly in accordance with the terms of the Plan, with any excess remaining with the Reorganized Debtors. To the extent a Final Order determines that the Allowed Trust Claim Amount is less than the value received by the Trust after the Effective Date from Reorganized Debtors, then the Reorganized Debtors shall have a claim against the Trust, secured by a lien against the Sarasota House in an amount equal to such over-paid value, which shall accrue interest at the Federal Judgment Rate. Additionally, at any time prior to the Trust Claim Amount becoming an Allowed Claim, the Trust shall have the exclusive right to purchase the Sarasota House for cash with third-party financing in an amount to be determined by a third-party appraisal as of the time of such purchase. The proceeds from such sale shall be deposited into the Reorganized Debtors. In the event the Trust exercises and consummates this purchase option, then the Transfer shall not take place and the Allowed Trust Claim Amount will not be reduced by the value of the Sarasota House.

iii. Issuance of Preferred Shares and Security: Upon a Final Order allowing the Trust Claim Amount, the Reorganized Debtors shall issue preferred shares to the Trust, with a face value of the Allowed Trust Claim Amount (the "Preferred Shares") with first priority in dividends. The Preferred Shares shall have a 4% dividend rate, which shall be non-cumulative and shall not accrue while the Trust Claim Amount remains a Disputed Claim. Each Redemption Payment by the Reorganized Debtors (with the dividend rate payment thereon) shall constitute a redemption of that portion of the Trust's Preferred Shares with a face value equal to the principal amount of the payment. The Trust's pre-petition Equity Interest in Smart Holding shall be retired and/or transferred to Smart Holding as of the Effective Date at the election of the Reorganized Debtors.

iv. Solvency: Payments to the Trust on account of the Allowed Trust Claim Amount shall be made only if, and to the extent of, the Reorganized Debtors' ability to make a distribution to a shareholder under section 607.0641, Florida Statutes, as required by Section 607.1436(8).

v. Retention of Jurisdiction: The Bankruptcy Court shall retain jurisdiction for the purpose of enforcing the terms of the treatment of the Allowed Trust Claim Amount until full and final payment has been made by the Reorganized Debtors.

vi. Events of Default: Events of default shall include, without limitation, failure to pay any obligations when due to the Trust hereunder; breach of any of the covenants set

forth in paragraphs (viii) and (ix) below; and change of control of the Reorganized Debtors; and incurrence of an unstayed judgment against the Reorganized Debtors in excess of $1,000,000, which remains unpaid for a period of sixty (60) days.

vii. Remedies: Upon the occurrence of an alleged Event of Default, after providing the Reorganized Debtors with notice specifically alleging the default and an opportunity to reasonably cure of no less than sixty (60) days, the Trust shall have the right to declare the then-balance of the Allowed Trust Claim Amount immediately subject to redemption by the Reorganized Debtors.

viii. Affirmative Covenants: The Reorganized Debtors shall comply, and shall cause each of their subsidiaries to comply, with affirmative covenants as to the following matters: maintain in effect their corporate existence and good standing in all jurisdictions; discharge on a timely basis all taxes, subject to a good faith dispute; notify the Trust of any litigation in which the counter-party seeks damages in excess $1,000,000; maintain financial statements in accordance with GAAP and; deliver to the Trust unaudited quarterly financial statements and unaudited annual financial statements as prepared in the ordinary course.

ix. Negative Covenants: The Reorganized Debtors shall not, and shall cause each of their subsidiaries not to, do any of the following without the prior written consent of the Trust or approval of the Bankruptcy Court: enter into any transaction or series of transactions, contract, agreement, or arrangement (including without limitation any management agreement, charitable contribution, advertising or promotional arrangement) with any Affiliates (which shall include without limitation each member of the board, executive officers of the Reorganized Debtors and their subsidiaries, any member of the respective families or spouses of the foregoing persons, and any entities controlled by or associated with any of the foregoing persons), unless such transactions (i) are on an arm's-length basis with terms that are no less favorable to the Reorganized Debtors or their subsidiaries than would have been obtained with unaffiliated third parties, and (ii) have been consented to in writing by the Trust or approved by the Bankruptcy Court; effect any sales or issuances of equity interests or any warrants, options, or other securities convertible into or exercisable for any equity interests, or such other transactions in respect of equity interests, which will impact the Trust's rights to preferred distributions; make, declare, or incur any liability to make any dividends or distributions with respect to equity interests, except for dividends payable to the Trust or distributions by a wholly-owned subsidiary of a Reorganized Debtors to such Reorganized Debtor; dissolve, wind up, or liquidate; sell, lease, assign, transfer, or otherwise dispose of any material portion of their Assets to any Person or entity in any transaction or related series of transactions without the prior written consent of the Trust or approval of the Bankruptcy Court; participate in any consolidation, merger, recapitalization, or other form of reorganization; become a party to a joint venture or other partnership; sell, discount, or otherwise dispose of any notes receivable, accounts receivable, or other right to receive payment, other than in the ordinary course of business consistent with past practice; change their names, identities, organizational structures, businesses, or fiscal years.

Class 8 is Impaired. As a result, the Holder of an Allowed Class 8 Claim is entitled to vote to accept or reject the Plan.

**Class 9: Claims Asserted by Jonathan Logan.**

Class 9 consists of Claim No. 19 of Jonathan Logan, in an unliquidated amount, for contingent advancement, reimbursement, and indemnification of legal fees and costs incurred in his capacity as a director, officer, or manager of the Debtors, together with related contribution claims; and Claim No. 20 of Jonathan Logan in the amount of $3,018,011.00 in unpaid wages for services provided from 2018 through 2025 in his capacity as a director, officer, or manager of the Debtors. The Allowed Claims of Jonathan Logan shall include a reduction to such Allowed Claims for all amounts expended by the Debtors for the benefit of the Tierra Verde House through the Effective Date.

i. On account of his Allowed Claims, Jonathan Logan shall have the right to purchase the Tierra Verde House at fair market value (which will be determined by a third-party appraisal), with such amount being deducted from Jonathan Logan's Allowed Claims. Until such time as the Tierra Verde House is no longer property of the Reorganized Debtors, and while Jonathan Logan continues to occupy the Tierra Verde House, Jonathan Logan shall have rent deducted from his Class 9 Allowed Claims in the amount of $30,000.00 per month, plus all expenses associated with the Tierra Verde House paid for by the Reorganized Debtors. Additionally, Jonathan Logan shall have the right to purchase one of the following: (i) the 2020 Lamborghini Huracan; (ii) the 2017 Ferrari 488 Spider; or (iii) the 2015 Rolls Royce Wraith, at fair market value, with such purchase amount being deducted from Jonathan Logan's Class 9 Allowed Claims. Each of the other two vehicles not being purchased by Jonathan Logan shall be liquidated by the Reorganized Debtors, with such proceeds paid to the Reorganized Debtors to be used by the Reorganized Debtors to fund the Financing Reserve.

ii. On account of his Class 9 Allowed Claims, after deductions provided for in the preceding paragraph, Jonathan Logan shall receive equal quarterly payments for a period of two (2) years, without interest, beginning on the later of (i) payment in full of the Allowed Trust Claim Amount, or (ii) the date of a Final Order Allowing the Jonathan Logan Claim.

**Class 10: Equity Interests in Smart Collier.**

Class 10 consists of the Equity Interests in Smart Collier. On the Effective Date, the legal, equitable and contractual rights of the Holders of the Allowed Equity Interests in Smart Collier shall be unimpaired, with Non-Debtor, Smart Communications Holdings, LLC, a Delaware Limited Liability Company, continuing to own 100% of the interest in the Reorganized Debtor, Smart Collier. Class 10 is Unimpaired. As a result, pursuant to Section 1126(f) of the Bankruptcy Code, each Holder of an Allowed Equity Interest in Class 10 is conclusively deemed to have accepted the Plan and therefore is not entitled to vote to accept or reject the Plan.

**Class 11: Equity Interests in Smart Holding.**

Class 11 consists of the Allowed Equity Interests in Smart Holding as of the day just prior to the Effective Date. On the Effective Date, the legal, equitable and contractual rights of the Holders of the Allowed Class 11 Equity Interests in Smart Holding shall be extinguished and shall not receive or retain anything under the Plan on account of such Allowed Equity Interests. Separately, on and as of the Effective Date, the Smart Holding Reorganized Debtor shall issue and deliver new Equity Interests in the Smart Holding Reorganized Debtor to Jonathan Logan or his designee reflecting 100% of the issued and outstanding shares of new Equity Interests in the Smart Holding Reorganized Debtor from and after the Effective Date. Class 11 is Impaired. As a result, pursuant to Section 1126(g) of the Bankruptcy Code, each Holder of an Allowed Equity Interest in Class 11 is conclusively deemed to have rejected the Plan and therefore is not entitled to vote to accept or reject the Plan.

## ARTICLE VI
## EFFECTUATION AND IMPLEMENTATION OF PLAN

### A. Implementation of the Plan.

From and after the Effective Date, the Reorganized Debtors shall continue their business operations in the same manner as the pre-Effective Date Smart Communications business enterprise, all in accordance with the Plan. On the Effective Date of the Plan, all Assets of the Debtors' Estates will vest in the respective Reorganized Debtor, and each Reorganized Debtor will thereafter manage its assets and implement the terms of the Plan, including making Distributions of Cash to Holders of Allowed Claims, as applicable, all as set forth in the Plan. Further, on the Effective Date, except as otherwise expressly provided in the Plan, all Assets of the Debtors (including the Litigation Claims) shall vest in the Reorganized Debtors free and clear of any and all Liens, obligations, Claims, Cure Claims, liabilities, and all other interests of every kind and nature, and the Confirmation Order shall so provide. As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of their Assets, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. All privileges with respect to the Assets of the Debtors' Estate, including the attorney/client privilege, to which the Debtors are entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtors.

The Plan Monitor shall oversee compliance with the Reorganized Debtors' Distribution obligations under the Plan. On the Effective Date, the Plan will be implemented, and the primary source of the funds necessary to implement the Plan will come from Cash on hand and the continued operations of the Reorganized Debtors. At the present time, the Debtors believe that the Reorganized Debtors will have sufficient funds as of the Effective Date to pay in full the expected payments required under the Plan on the Effective Date, including to the Holders of Allowed Administrative Claims (including Allowed Administrative Claims of Professionals).

On the Effective Date, Loco shall enter into a new lease with the Reorganized Debtors for the use and occupancy of the Premises located at 10491 72nd Street, Seminole, Florida 33777 (the "Loco Lease"). The terms of the Loco Lease shall include a monthly rental payment from Smart

Collier to Loco in the amount of $32,000.00. The Loco Lease shall be for a five-year period, beginning on the Effective Date and provide for an annual CPI increase for the term of the Loco Lease. The Loco Lease shall also provide that Loco will be responsible for paying the real estate taxes and insurance on the physical structure and will be responsible for maintaining the physical structure as well as the larger mechanical systems within the Premises. The Reorganized Debtors will be responsible for the maintenance of the interior space and insurance on their property located within the Premises. The Loco Lease will be filed by the Debtors in the Plan Supplement.

On the Effective Date, HLFIP shall enter into the Exclusive License Agreement with the Reorganized Debtors whereby HLFIP shall grant to the Reorganized Debtors the HLFIP Exclusive License. The HLFIP Exclusive License Agreement shall be effective as of and retroactive to the Effective Date and shall be for a term that will expire on the thirtieth (30th) day subsequent to the completion of all payments required under the Plan. The HLFIP Exclusive License Agreement may be renewed upon terms mutually acceptable to HLFIP and the Reorganized Debtors prior to the expiration thereof. The Exclusive License Agreement will be filed by the Debtors in the Plan Supplement.

## B. Corporate Action.

Upon entry of the Confirmation Order, the actions and transactions contemplated by the Plan shall be deemed authorized and approved as a matter of applicable non-bankruptcy corporate law in all respects. On the Effective Date, the Reorganized Debtors shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan.

## C. Management of the Reorganized Debtors.

Subject to any requirement of Bankruptcy Court approval pursuant to Section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the officers, partners, directors, members and managers, as the case may be, of the Debtors immediately prior to the Effective Date shall be deemed to be the officers, partners, directors, members and managers of the Reorganized Debtors without any further action by any party. However, upon the Effective Date, Joseph J. Luzinski, the Chief Restructuring Officer, shall been deemed to have resigned and shall have no further obligations or duties owed to the Debtors or Reorganized Debtors, except as otherwise agreed between Joseph J. Luzinski and the Reorganized Debtors. Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed above the identity and affiliation of any individuals proposed to serve as the initial officers, partners, directors, members and managers of the Reorganized Debtors.

On and after the Effective Date, the operations of the Reorganized Debtors shall continue to be the responsibility of their officers, partners, directors, members and managers, as the case may be, or as set forth in the applicable existing organizational or operational documents of the Debtors. Each officer, partner, director, member and manager, as applicable, of the Reorganized Debtors shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the applicable articles or certificate of incorporation, operating agreement or other organizational documents of the Reorganized Debtors. From and after the Effective Date, the officers, partners,

directors, members and managers, as applicable, of the Debtors and the Reorganized Debtors, as the case may be, shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

Notwithstanding anything herein to the contrary, after the Effective Date, it is contemplated that the Reorganized Debtors shall continue to be managed by Jonathan Logan as CEO of the Reorganized Debtors. Jonathan Logan shall be paid an annual base salary of $850,000.00 per year as CEO of the Debtors, as of the Effective Date, plus the Additional Salary. Until such time that the Allowed Trust Claim Amount has been paid in full, Jonathan Logan's compensation shall not be modified absent (i) an agreement between the Reorganized Debtors, Jonathan Logan, and the Trust, or (ii) the entry of an order by the Bankruptcy Court.

The Financing Reserve shall initially be funded at the amount of $5,000,000.00 as set forth herein (the "Initial Reserve"), as soon as practical after the Effective Date after the Reorganized Debtors have made all payments to Allowed Administrative Claims and have maintained a $3,000,000.00 capital reserve. Beginning after all Allowed General Unsecured Claims and Allowed Claims in Classes 2 through 6 have been paid in full, reserved, or otherwise resolved, the remaining Unrestricted Cash after the payment of the applicable Redemption Payment and the payment of Additional Salary shall be deposited in the Financing Reserve, which deposits shall commence on the date that is thirty (30) days after the end of each calendar quarter, with each such deposit increasing the Financing Reserve by the amount of such deposit (the "Revised Reserve"). The Reorganized Debtors shall be authorized to use the Financing Reserve as necessary, pursuant to the business judgment of the Reorganized Debtors, to acquire equipment and contracting services as necessary to complete contracts with customers, including for the purchase of tablets, wearables, and other electronics, and for labor. To the extent the Financing Reserve is utilized, the Reorganized Debtors shall replenish such amounts as soon as practical, pursuant to the business judgment of the Reorganized Debtors, such that the Financing Reserve is maintained at the greater of the Initial Reserve or Revised Reserve. The existence of the Financing Reserve does not prohibit the Reorganized Debtors from borrowing money from third-party sources as may be necessary.

## D. Exemption From Transfer Taxes.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security, or the making, delivery or recording of any instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan, or the vesting, re-vesting, transfer or sale of any Asset of, by or in the Debtors or their Estates or Reorganized Debtors pursuant to, in implementation of or as contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, by the Confirmation Order, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**E. Miscellaneous.**

Except to the extent otherwise provided herein or the Confirmation Order, upon the Effective Date, all pre-petition agreements (other than Assumed Contracts and third party guaranties and indemnities of the Debtors' obligations), credit agreements, pre-petition loan documents and post-petition loan documents to which the Debtors are a party, and all lien claims and other evidence of liens against the Debtors, shall be deemed to be cancelled and of no further force and effect, without any further action on the part of the Debtors. The holders of, or parties to, such cancelled instruments, agreements, securities and other documentation will have no remaining rights arising from or relating to such documents or the cancellation thereof, except the rights provided pursuant to the Plan and the Confirmation Order and any rights that, by the terms of the applicable agreement, survive the termination of such agreement.

At such time as the Reorganized Debtors deem appropriate, the Reorganized Debtors shall file a final accounting with the Bankruptcy Court, together with a final report, and shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VII
## PLAN MONITOR

**A. Appointment of the Plan Monitor.**

As of the Effective Date, the Debtors appoint Joseph J. Luzinski as the Plan Monitor. Mr. Luzinski has demonstrated the necessary experience in financial oversight, restructuring, or fiduciary administration required for such role.

**B. Resignation or Death of the Plan Monitor.**

The Plan Monitor may resign by providing at least thirty (30) days' prior written notice to the Reorganized Debtors, the Trust, the United States Trustee, and the Bankruptcy Court. During such notice period, the Plan Monitor shall continue to perform all duties under the Plan and shall cooperate with the transition to a successor Plan Monitor, including by providing access to all records, reports, and work product. The resignation shall become effective on the later of: (i) the expiration of the thirty (30) day notice period; or (ii) the date on which a successor Plan Monitor is appointed and approved by the Bankruptcy Court. In the event of the death or incapacity of the Plan Monitor, the vacancy shall be effective immediately, and the Reorganized Debtors shall promptly notify the Bankruptcy Court, the Trust, and the United States Trustee of such event. The estate or legal representative of a deceased or incapacitated Plan Monitor shall cooperate with the transition to a successor Plan Monitor, including by providing access to all records and work product in the possession of the Plan Monitor.

**C. Appointment of a Replacement Plan Monitor.**

In the event of a vacancy in the position of Plan Monitor, whether by resignation, death, incapacity, removal, or otherwise, a replacement Plan Monitor shall be appointed. The Reorganized Debtors shall propose a replacement Plan Monitor within thirty (30) days of the vacancy. The proposed replacement Plan Monitor shall have demonstrated experience in financial

oversight, restructuring, or fiduciary administration and shall not be an Insider of the Debtors or Reorganized Debtors. The appointment of the replacement Plan Monitor shall be subject to the prior written consent of the Trust or approval by the Bankruptcy Court. If the Reorganized Debtors fail to propose a replacement Plan Monitor within such thirty (30) day period, or if the proposed replacement Plan Monitor is not approved by the Bankruptcy Court, the Trust may propose a replacement Plan Monitor (who shall not be affiliated with the Trust), subject to approval by the Bankruptcy Court. Pending the appointment of a successor Plan Monitor, the Reorganized Debtors shall continue to comply with all obligations under the Plan and shall make all records, books, and financial statements available for inspection by the Trust and the United States Trustee.

**D. <u>Role and Authority.</u>**

The Plan Monitor shall be authorized and directed to monitor the Reorganized Debtors' compliance with the terms of the Plan following the Effective Date. The Plan Monitor shall have the authority to: (i) review the books, records, and financial statements of the Reorganized Debtors; (ii) consult with the officers, directors, employees, and professionals of the Reorganized Debtors; (iii) take such other actions as are reasonably necessary to fulfill the Plan Monitor's obligations under the Plan; and (iv) to the extent necessary act as the individual responsible for approval of any affiliated transactions which the Reorganized Debtors seek to enter into during the life of the plan.

**E. <u>Verification of Payments.</u>**

The Plan Monitor shall verify that all payments due to Holders of Allowed Claims and other parties under the Plan are properly calculated and timely made in accordance with the terms of the Plan. The Plan Monitor shall promptly notify the Reorganized Debtors, and if the issues are not resolved by consent, then the Plan Monitor shall notify the Bankruptcy Court of any discrepancies or deficiencies in such payments and seek relief in connection therewith.

**F. <u>Reporting Obligations.</u>**

Until such time as the Chapter 11 Cases are closed, the Plan Monitor shall file periodic written reports with the Bankruptcy Court and serve copies upon the Reorganized Debtors, the United States Trustee, the Trust, and such other parties as the Bankruptcy Court may direct. Such reports shall be filed no less frequently than quarterly, beginning on the date that is ninety (90) days after the Effective Date, and shall include: (i) a summary of the Reorganized Debtors' compliance with the Plan; (ii) a description of all Distributions made during the reporting period; (iii) the status of any Disputed Claims; and (iv) such other information as the Plan Monitor deems relevant or as the Bankruptcy Court may require. Upon the Chapter 11 Cases being closed, the Plan Monitor shall no longer file periodic reports, instead serving the periodic reports on the Trust, and such other parties in interest as previously directed by the Bankruptcy Court.

**G. <u>Compensation and Expenses.</u>**

The Plan Monitor shall be entitled to reasonable compensation for services rendered and reimbursement of actual and necessary expenses incurred in the performance of the Plan Monitor's duties under the Plan, including the fees and expenses of counsel to the Plan Monitor if the Plan Monitor determines that he requires the assistance of counsel. Such compensation and expenses

shall be paid by the Reorganized Debtors. The Plan Monitor's compensation shall be an obligation of the Reorganized Debtors and shall be treated as an operating expense of the Reorganized Debtors.

### H. Duration and Termination.

The Plan Monitor's appointment shall commence on the Effective Date and shall continue until the earlier of: (i) the date on which all Distributions required under the Plan have been completed and a final report has been served by the Plan Monitor; or (ii) the entry of an order of the Bankruptcy Court terminating the Plan Monitor's appointment upon motion of the Reorganized Debtors, with notice to the United States Trustee and all parties who have requested notice, and a finding by the Bankruptcy Court that the Plan Monitor's continued service is no longer necessary.

### I. Dispute Resolution.

In the event of a dispute between the Plan Monitor and the Reorganized Debtors regarding the Plan Monitor's determinations, findings, or recommendations, either party may seek resolution of such dispute by filing a motion with the Bankruptcy Court. The Bankruptcy Court shall retain jurisdiction to resolve any such disputes. Pending resolution of any such dispute, the Reorganized Debtors shall continue to comply with all undisputed obligations under the Plan.

### J. Plan Monitor Approval for Relief in the Bankruptcy Court.

Any party in interest, other than the Reorganized Debtors, wanting to seek relief in any court of competent jurisdiction arising from or relating to an alleged breach of the Plan by the Reorganized Debtors must first obtain the written approval of the Plan Monitor before filing any motion, complaint, or other pleading seeking such relief. The party in interest shall provide the Plan Monitor with a written request for approval describing with reasonable specificity the alleged breach and the relief sought. The Plan Monitor shall respond to such request within thirty (30) days of receipt. If the Plan Monitor approves the request, the party in interest may proceed to seek relief in the Bankruptcy Court or other court of competent jurisdiction. If the Plan Monitor denies the request or fails to respond within such thirty (30) day period, the party in interest may seek leave of the Bankruptcy Court to pursue such relief, upon notice to the Plan Monitor, the Reorganized Debtors, the Trust, and the United States Trustee. Notwithstanding the foregoing, this approval requirement shall not apply to: (i) emergency motions where the party in interest can demonstrate that immediate and irreparable harm would result from a delay; or (ii) motions filed by the United States Trustee in the performance of the United States Trustee's statutory duties.

## ARTICLE VIII
## EXCULPATION, INJUNCTION AND RELEASES

### A. Exculpation, Injunction and Releases.

#### 1. Exculpation and Limitation of Liability.

**Neither the Debtors, nor any Professionals engaged by the Debtors, nor any of their respective officers, directors, members, employees, representatives, counsel, advisors, agents, parents, subsidiaries and affiliates, and each of their respective successors and**

**assigns (collectively, the "Exculpated Parties") shall have or incur liability to any Person, including to the Holder of any Claim or Interest, for any act taken or omission made or taken from an after the Petition Date, including in connection with the filing, negotiating, prosecuting, administering, formulating, implementing, confirming or consummating the Plan or the Assets to be distributed under the Plan, for any act or failure to act in furtherance of the rights and obligations under the Plan, or for any act or omission in connection with, in preparation for, or arising out of, the Chapter 11 Cases, including, without limiting the generality of the foregoing, the preparation of schedules and statement of financial affairs, the negotiation of the terms of the Plan and the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except to the extent that such act or failure to act constitutes gross negligence, willful misconduct or fraud. Notwithstanding anything herein to the contrary, neither Janice Logan, nor the Trust, nor Alexis Logan, nor Justin Peterson shall be deemed to be Exculpated Parties.**

**The rights granted under the Plan are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Exculpation from Liability shall not release any of the Litigation Claims.**

**2. General Injunction.**

**Unless otherwise provided herein, all injunctions or stays applicable to the Assets of the Estates, whether pursuant to Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect with respect to the Reorganized Debtors and their Assets. In addition, the Reorganized Debtors shall have the right to invoke the provisions of the Bankruptcy Code made applicable by the Plan and all of the Bankruptcy Rules.**

**Except as otherwise specifically provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims, rights, Litigation Claims, liabilities or any equity Interests with respect to the Debtors or their respective Assets based upon any act or omission, transaction or other activity of any kind or nature that occurred or arose prior to the Effective Date, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such Person has voted to accept the Plan and any successors, assigns or representatives of the foregoing, will be precluded and permanently enjoined on and after the Effective Date from, on account of such Claims, rights, Litigation Claims, liabilities or any Equity Interests, (a) commencing or continuing in any manner any action or other proceedings against the Reorganized Debtors or any of their Assets, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtors or any of their Assets, (c) creating, perfecting or enforcing any encumbrance of any kind against the Reorganized Debtors or any of their Assets, (d) asserting a setoff or right of recoupment of any kind against any debt, liability or obligation; and (e) commencing or continuing, in any**

**manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; provided, however, the foregoing shall not preclude the right to enforce the obligations under the Plan.**

3. **Releases by the Debtors**..

**On the Effective Date, the Debtors, in their individual capacities and as debtors in possession on behalf of the Estates, will be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, Litigation Claims and liabilities (other than the rights of the Debtors or Reorganized Debtors to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Debtors' Assets or business operations, the Chapter 11 Cases, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates or the Reorganized Debtors, whether directly, indirectly, derivatively or in any representative or any other capacity, against each of Yacht, Loco, HLFIP, and Jonathan Logan (collectively, the "Released Parties").**

4. **Preservation and Prosecution of Litigation Claims**.

On the Effective Date, the Litigation Claims shall be transferred to and vested in the applicable Reorganized Debtor. The Reorganized Debtors shall have the right to prepare, file, pursue, prosecute and settle the Litigation Claims, whether or not such Litigation Claims have been asserted or commenced as of the Effective Date, as a representative of the estates pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code appointed for such purpose for the benefit of holders of Allowed Claims and Allowed Equity Interests. To the extent that certain Litigation Claims are filed by the Debtors and are not resolved prior to the Effective Date, such Litigation Claims will be transferred to and vest in the Reorganized Debtors pursuant to the terms of the Plan.

IN ADDITION TO THE ABOVE, THE DEBTORS MADE CERTAIN PAYMENTS TO PERSONS AND ENTITIES BOTH WITHIN NINETY (90) DAYS PRIOR TO THE PETITION DATE AND WITHIN ONE (1) YEAR PRIOR TO THE PETITION DATE. ATTACHED TO THE DEBTORS SCHEDULES ARE LISTS OF THE PAYMENTS MADE WITHIN NINETY (90) DAYS AND ONE (1) YEAR PRIOR TO THE PETITION DATE, RESPECTIVELY. ALL SUCH PERSONS AND ENTITIES MAY BE SUBJECT TO CLAIMS AND LITIGATION CLAIMS RELATED TO THE RECOVERY OF SUCH PAYMENTS, INCLUDING CLAIMS AND LITIGATION CLAIMS UNDER AND PURSUANT TO SECTIONS 542 THROUGH 550 OF THE BANKRUPTCY CODE OR OTHERWISE.

There may be claims and Litigation Claims which currently exist or may subsequently arise that are not set forth specifically herein because the facts upon which such claims and Litigation Claims rest are not fully or currently known by the Debtors. The failure to list any such claims or Litigation Claims is not intended to limit the rights of the Reorganized Debtors to pursue such Litigation Claims at such time as the facts giving rise thereto become fully known.

Unless any of the Litigation Claims are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or by Final Order of the Bankruptcy Court, all such Litigation Claims are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Litigation Claims upon or after confirmation or consummation of the Plan.

Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or the Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment or bar, in whole or in part, of or to any recovery rights or any other claim, right or cause of action, including Litigation Claims, possessed by the Debtors or the Debtors' Estates prior to the Effective Date.

The Debtors are currently not in a position to express an opinion on the merits of any of the Litigation Claims or on the recoverability of any amounts as a result of any such Litigation Claims. For purposes of providing notice, the Debtors state that any party in interest that engaged in business or other transactions with any of the Debtors Prepetition or that received payments from any of the Debtors Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. The Reorganized Debtors will fund the costs and expenses (including legal fees) to pursue the Litigation Claims.

No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Litigation Claim. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Litigation Claim. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO RELEASE ANY LITIGATION CLAIM OR OBJECTIONS TO CLAIMS, UNLESS SPECIFICALLY STATED AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF REORGANIZED DEBTORS. Creditors are advised that legal rights, claims and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtors to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors or Reorganized Debtors do not possess or do not intend to prosecute a particular claim or Litigation Claim if a particular creditor votes to accept the Plan. It is the expressed intention under the Plan to preserve rights, objections to Claims, and rights of action of the Debtors, whether now known or unknown, for the benefit of Reorganized Debtors. A Litigation Claim shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe such Litigation Claim with specificity in the Plan or in the Disclosure Statement; nor shall the Reorganized Debtors, as a result of such failure, be estopped or precluded under any theory from pursuing any such Litigation Claim. Nothing in the Plan operates as a release of any Litigation Claim.

The Reorganized Debtors (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any Litigation Claim which the Debtors had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Litigation Claim. From and after the Effective Date, Reorganized Debtors shall be

authorized, pursuant to Bankruptcy Rule 9019 and Section 105(a) of the Bankruptcy Code, to compromise and settle any Litigation Claim or objection to a Claim and execute necessary documents, including a stipulation of settlement or release

## ARTICLE IX
## EXECUTORY CONTRACTS AND LEASES

### A. Assumption or Rejection of Executory Contracts and Unexpired Leases.

All executory contracts and unexpired leases between the Debtors and any Person or entity are dealt with as follows:

#### 1. Assumption of Executory Contracts and Unexpired Leases.

Pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that currently exist between any Debtors and another Person or Entity that are not expressly listed as rejected on Exhibit A attached hereto shall be assumed by the applicable Debtors as of the Effective Date (collectively, the "Assumed Contracts"); provided, however, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend Exhibit A to add any executory contract or unexpired lease thereto or to delete any executory contract or unexpired lease therefrom, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be assumed (if deleted) or rejected (if added). The Debtors shall provide notice of any amendments to Exhibit A to the parties to the executory contracts and unexpired leases affected thereby. The listing of a document on Exhibit A shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that either of the Debtors has any liability thereunder.

#### 2. Rejection of Executory Contracts and Unexpired Leases.

Any executory contract or unexpired lease that exists between any Debtors and another Person and that is listed on Exhibit A shall be deemed rejected by the applicable Debtors as of the Confirmation Date (collectively, the "Rejected Contracts"), unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease. For purposes of the Plan, (i) all non-compete agreements, confidentiality or non-disclosure agreements and indemnification agreements executed for the benefit of any of the Debtors shall be deemed to be executory contracts and Assumed Contracts, and (ii) except as provided therein, all non-compete agreements, confidentiality or non-disclosure agreements and indemnification agreements executed by any Debtors for the benefit of a third party shall be deemed to be executory contracts and Rejected Contracts (even if not listed on Exhibit A),.

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the Assumed Contracts pursuant to the Plan, and (ii) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the Rejected Contracts pursuant to the Plan. The assumption by any Debtors of an Assumed Contract shall be binding upon any and all parties to such Assumed Contract as a matter of law, and each such Assumed Contract shall be fully enforceable by Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan or an order of the Bankruptcy Court.

**3. Inclusiveness.**

Unless otherwise specified on Exhibit A, each executory contract and unexpired lease listed or to be listed on Exhibit A shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Exhibit A.

**4. Cure of Defaults.**

Any lessor or other party to an Assumed Contract (except those lessors or other parties whose unexpired leases or executory contracts have been previously assumed by a Final Order of the Bankruptcy Court) asserting a Cure Claim in connection with the assumption of any unexpired lease or executory contract as contemplated by Section 365(b) of the Bankruptcy Code, must file such Cure Claim with the Bankruptcy Court on or before the Cure Claim Submission Deadline asserting all alleged amounts accrued and due thereunder, or alleged defaults existing, through the Effective Date. The Reorganized Debtors shall not and need not as a condition to assuming any executory contract or unexpired lease under the Plan, cure any default relating to a Debtor's failure to perform a nonmonetary obligation under any executory contract or unexpired lease.

Any lessor or other party to an Assumed Contract failing to file a Cure Claim by the Cure Claim Submission Deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Debtors or Reorganized Debtors or the Assets of any of them. The Reorganized Debtors shall have sixty (60) days from the Effective Date to file an objection to any Cure Claim. Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties or ordered by the Bankruptcy Court, by no later than the date which is six (6) months after the Effective Date, the Reorganized Debtors shall cure any and all undisputed Cure Claims. All disputed Cure Claims shall be cured either within sixty (60) days after the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto or as may otherwise be agreed to by the parties or ordered by the Bankruptcy Court.

**5. Rejection Claims Bar Date.**

Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Rejection Claims Bar Date in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtors or Reorganized Debtors or the Assets of either of them. With respect to the Rejected Contracts, the Rejection Claims Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be thirty (30) days after the date the Confirmation Order is entered in the Bankruptcy Court's docket (the "Rejection Claims Bar Date"). The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons who may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Rejection Claims Bar Date for filing a Claim in connection therewith.

All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed General Unsecured Claims in Class 7. Any such Claims that become Disputed Claims shall be Disputed Claims in Class 7 for purposes of administration of Distributions under the Plan to Holders of Allowed General Unsecured Claims in Class 7.

## ARTICLE X
## DISTRIBUTIONS

### A. **Distributions by the Reorganized Debtors**.

Subject to the terms of the Plan, the Reorganized Debtors shall make the Distributions required under the Plan to Holders of Allowed Administrative Claims (including Allowed Professional Fee Claims), Allowed Priority Claims and Holders of Allowed Claims as and when required by the terms of each Plan. All Distributions under the Plan shall be made by the Reorganized Debtors. The Reorganized Debtors may employ or contract with other entities to assist in or facilitate the Distributions required by the Plan without further order of the Bankruptcy Court. All payments shall be made in accordance with the priorities established in the Bankruptcy Code unless otherwise provided in the Plan or agreed to with the payee.

### B. **Determination of Claims**.

From and after the Effective Date, the Reorganized Debtors shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to

Claims. Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than the date set by the Bankruptcy Court (unless such period is extended by the Bankruptcy Court upon motion of the Debtors), and the Confirmation Order shall contain appropriate language to that effect. Late-Filed Claims shall automatically be deemed Disputed Claims.

Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors or Reorganized Debtors, as the case may be, effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Chapter 11 Cases on behalf of the Holder of a Claim.

Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Chapter 11 Cases, such Claim may be estimated by the Bankruptcy Court for purposes of allowance and Distribution. The Debtors or Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Reorganized Debtors

previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in estimation hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution.

All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific estimation hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

The Reorganized Debtors will withhold from the property that would otherwise be distributed to holders of Priority Tax Claims an amount sufficient to be distributed on account of Priority Tax Claims that are not Allowed Priority Tax Claims as of the Effective Date and shall place such withheld property in the Disputed Tax Claims Reserve pending allowance or disallowance of such Claim.

The Reorganized Debtors will withhold from the property that would otherwise be distributed to Holders of Claims in Class 3, Class 5, Class 7 and Class 8, as applicable, an amount sufficient to be distributed on account of Claims that are not Allowed Claims as of the Effective Date, and shall place such withheld property in the Disputed Claims Reserve pending allowance or disallowance of such Claim.

**C. Delivery of Distributions in General.**

Distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth in the proofs of Claim filed by such holders; (b) at the addresses set forth in any written notices of address change delivered to the Debtors prior to the Effective Date or the Reorganized Debtors after the Effective Date; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no proof of Claim has been filed and the Debtors or Reorganized Debtors have not received a written notice of a change of address.

**D. Cash Payments.**

Cash payments to be made pursuant to the Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Reorganized Debtors.

**E. No Interest on Claims.**

Unless otherwise specifically provided for in the Plan or the Confirmation Order or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from

the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

**F. <u>No De Minimus Distributions</u>.**

Other than in the final Distribution, no payment of Cash in an amount of less than $10 shall be made on account of any Allowed Claim.

**G. <u>Face Amount</u>.**

Unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, the "Face Amount" of a Disputed Claim means the amount set forth on the proof of Claim unless the Disputed Claim has been estimated for distribution purposes or, in the alternative, if no proof of Claim has been timely filed or deemed filed, zero (0).

**H. <u>Failure to Negotiate Checks</u>.**

Checks issued in respect of Distributions under the Plan shall be null and void if not negotiated within 90 days after the date of issuance. Any amounts returned to the Reorganized Debtors in respect of such non negotiated checks shall be held by the Reorganized Debtors, until such time as it qualifies for Unclaimed Property or if earlier a request for reissuance is received by the Reorganized Debtors. Requests for reissuance of any such check shall be made in writing, directly to the Reorganized Debtors by the holder of the Allowed Claim with respect to which such check originally was issued. All such amounts that become Unclaimed Property and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Reorganized Debtors.

**I. <u>Unclaimed Distributions</u>.**

If any Distribution of funds pursuant to the Plan remains unclaimed for a period of ninety (90) days after it has been delivered to the Holder entitled thereto, then the amount of such Distribution shall be retained by the Reorganized Debtors and all further distributions to such Holder shall be deemed waived.

A distribution of funds is unclaimed, if, without limitation, the Holder of a Claim entitled thereto does not Cash a check or returns a check or if the check mailed to the Holder at the address set forth in the Debtors Schedules or set forth in a proof of Claim filed by such Holder is returned by the United States Postal Service or any other country's postal service as undeliverable. Except as otherwise expressly provided in the Plan, the Reorganized Debtors may setoff or recoup against any Claim and the payments made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever that the Reorganized Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any Claim that the Reorganized Debtors may have against the Holder of such Claim.

Unless the Holder of a Claim advises the Reorganized Debtors or their attorneys in writing of a change of address, all distributions or notices shall be sent to the Holder at his address as stated in the Debtors' Schedules, as stated in a properly filed proof of Claim or to such Holder's attorney

of record in these Chapter 11 Cases. The Reorganized Debtors shall have no obligation to locate the Holder of a Claim whose distribution or notice is properly mailed but nevertheless returned.

**J. No Payment or Distribution Pending Allowance.**

All references to Claims and Interests and amounts of Claims and Equity Interests refer to the amount of the Claim or Equity Interest allowed by operation of law, Final Order of the Bankruptcy Court or the Plan. Accordingly, notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim or Equity Interest to the extent it is a Disputed Claim or Disputed Interest, unless and until the Disputed Claim or Disputed Interest becomes an Allowed Claim or an Allowed Interest, as applicable. No partial distributions will be made while an Objection is pending to part or all of a Claim or Interest.

**K. Disputed Distributions.**

If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any Distribution, the Reorganized Debtors shall not be obligated to make a Distribution to such holder unless and until such dispute is determined by Final Order of a court of competent jurisdiction, or by written agreement among the interested parties to such dispute.

**L. Estimation of Disputed Claims.**

In order to effectuate Distributions pursuant to the Plan and avoid undue delay in the administration of the Estates, the Reorganized Debtors shall have the right, at any time, to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim and which hearing may be held on an expedited basis), estimating a Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, irrespective of whether the Reorganized Debtors has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. All of these objection and resolution procedures are cumulative and not necessarily exclusive of one another. In addition to seeking estimation of Claims as provided herein, the Reorganized Debtors may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim and the rights of the holder of such Claim would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced, subject only to the terms of the Plan.

**M. Resolution of Disputed Claims and Interests.**

Subject to the terms of the Plan, the Debtors and/or the Reorganized Debtors, as applicable, shall have the right to (a) initiate and prosecute any objections to Claims against the Debtors or the Estates, (b) request estimation of each such Claim, (c) litigate any objection to Final Order, (d) settle or to compromise any Claim, or (e) withdraw any objection to any Claim (other than an Allowed Claim or a Claim that is deemed to be allowed pursuant to the Plan or a Final Order).

**N. Distributions in Complete Satisfaction.**

The Distributions and rights provided under the Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of all Claims against and Interests in the Debtors' Estates or the Debtors' Assets. The holders of liens satisfied, discharged and released

under the Plan shall execute and deliver, or cause to be executed and delivered, any and all documentation reasonably requested by the Reorganized Debtors evidencing the satisfaction, discharge and release of such liens.

**O. Taxpayer Identification Number.**

The Debtors and/or Reorganized Debtors may require any holder with an Allowed Claim or holder of an Allowed Interest entitled to a Distribution under the Plan to furnish its, his or her employer or taxpayer identification number (the "TIN") assigned by the Internal Revenue Service. Any Distribution under the Plan may be conditioned on the receipt of such TIN. If any such holder entitled to a Distribution hereunder fails to provide a requested TIN within forty-five (45) days after the request thereof, then such failure shall be deemed to be a waiver of such holder's interest in any future Distributions, including the right to receive any future Distributions.

**P. Discharge.**

Commencing on the Effective Date, except as otherwise provided, all holders of Claims and Interests shall be precluded forever from asserting against the Debtors' Estates, the Reorganized Debtors or their respective assets, any other or further liabilities, lien obligations, claims or equity Interest, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim or Interest, whether or not allowed, in each case to the fullest extent under section 1141 of the Bankruptcy Code. As of the Effective Date, the Reorganized Debtors shall be discharged, released from and shall hold the assets received or retained by and pursuant to this Plan, free and clear of all liabilities, liens, claims or obligations or other claims of any nature of the Debtors or their respective Estates except as otherwise provided herein, in each case to the fullest extent under section 1141 of the Bankruptcy Code.

**Q. Compliance with Tax Requirements.**

In connection with this Plan and the distributions made in accordance thereto, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

## ARTICLE XI
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A. Conditions Precedent.**

The following are conditions precedent to the Effective Date that must be satisfied or waived by the Debtors:

(1) The Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors confirming and approving the Plan in all respects, and the Confirmation Order shall have become a Final Order.

(2) There shall be no stay or injunction in effect with respect to the Confirmation Order.

**B. Waiver.**

Notwithstanding the foregoing conditions, the Debtors reserve, in their sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent. Any such written waiver of a condition precedent set forth in this Plan may be affected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## ARTICLE XII CRAMDOWN

If all of the applicable requirements of Section 1129(a) of the Bankruptcy Code are met other than Paragraph 8 of said such section which requires that all Impaired Classes accept the Plan, the Proponents will then seek confirmation pursuant to Section 1129(b) of the Bankruptcy Code, which is commonly referred to as the "cram down" provision. For the purposes of seeking Confirmation under the cram down provision of the Bankruptcy Code, should that alternative means of Confirmation prove to be necessary, the Debtors reserve the right to modify or vary the terms of the Plan with regard to the Allowed Claims of any rejecting classes, so as to comply with the requirements of Section 1129(b).

## ARTICLE XIII EFFECT OF CONFIRMATION

This Plan, when approved and confirmed by the Bankruptcy Court, shall be deemed binding on the Debtors, the Debtors' creditors and all parties in interest and their successors and assigns in accordance with Section 1141 of the Bankruptcy Code.

In addition, except as otherwise expressly provided in the Plan, all persons, entities and parties in interest who have held, hold or may hold Claims are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of such Claim against the Debtors, Estates or the Reorganized Debtors; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Estates, or the Reorganized Debtors; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, the Estates, the Reorganized Debtors, or against the Assets, the Reorganized Debtors Assets, property or interests in property of the Debtors, the Estates, or the Reorganized Debtors, with respect to any such Claims; and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Estates, or the Reorganized Debtors or against the Assets, the Reorganized Debtors Assets, property or interests in property of the Debtors, the Estates, or the Reorganized Debtors, with respect to any such Claim.

## ARTICLE XIV
## AMENDMENT AND MODIFICATION

The Debtors may alter, amend, or modify this Plan under Section 1127 of the Bankruptcy Code or as otherwise permitted at any time before the Effective Date. After the Effective Date but before substantial consummation of the Plan as defined in Bankruptcy Code § 1101 (2), the Debtors or Reorganized Debtors may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any matters necessary to carry out the purposes and effects of the Plan as long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan. The Debtors and/or Reorganized Debtors must serve prior notice of such proceedings in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

After the entry of the Confirmation Order and before the Effective Date the Plan, the Debtors (prior to the Effective Date) or the Reorganized Debtors (on the Effective Date) may modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements, (b) the Debtors or Reorganized Debtors (as the case may be) obtain Bankruptcy Court approval for such modification, after notice, including to the Class of Claims or Equity Interests materially adversely affected and a hearing, (c) such modification is accepted by (i) at least two-thirds in dollar amount, and more than one-half in number, of the Allowed Claims actually voting in each Class of Claims adversely affected by such modification or (ii) at least two-thirds in amount of Allowed Equity Interests actually voting in each Class of Equity Interests adversely affected by such modification, and (d) the Debtors or Reorganized Debtors (as the case may be) comply with Section 1125 of the Bankruptcy Code with respect to the Plan or such other Plan Documents, as modified. Notwithstanding anything to the contrary contained in the Plan, the Plan may not be altered, amended or modified without the written consent of the Debtors (prior to the Effective Date) or Reorganized Debtors (on and after the Effective Date).

## ARTICLE XV
## REVOCATION

The Debtors reserve the right, at any time prior to the substantial consummation (as that term is defined in Section 1101(2) of the Bankruptcy Code) of this Plan, to revoke or withdraw this Plan. If this Plan is revoked or withdrawn or if the Confirmation Date or the Effective Date does not occur, this Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against the Debtors or any other Person, constitute an admission of any fact or legal conclusion by the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

## ARTICLE XVI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Reorganized Debtors, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

(a) determine all controversies and disputes arising under or in connection with the Plan and all agreements referred to in the Plan, including but not limited to, all Litigation Claims brought by the Debtors or the Reorganized Debtors.

(b) allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to the Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Interest (to the extent permitted under applicable law);

(c) grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for services provided on or before the Effective Date;

(d) hear and determine motions, applications, adversary proceedings, contested matters and other litigated matters pending on, filed or commenced after the Effective Date, including proceedings with respect to the rights and Claims of the Reorganized Debtors to recover property under Sections 542, 543 or 553 of the Bankruptcy Code, or to bring or continue prosecuting any Litigation Claims, or otherwise to collect or recover on account of any claim or Litigation Claim that the Reorganized Debtors may have;

(e) determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(f) ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided therein, and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of the Plan, including reviewing reports of the Plan Monitor and resolving disputes between the Plan Monitor and the Reorganized Debtors under Article VII of the Plan;

(g) construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Section 1142 of the Bankruptcy Code, as may be necessary

for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases, indentures and other agreements or documents that are part of the Reorganized Debtors;

(h) determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any Person's rights arising under or obligations incurred in connection therewith;

(i) consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

(j) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(k) enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(l) determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(m) hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

(n) continue to enforce the automatic stay through the date of the final Distribution hereunder;

(o) hear and determine: (i) disputes arising in connection with the interpretation, implementation or enforcement of the Plan and the Confirmation Order; or (ii) issues presented or arising under the Plan and Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan or the Confirmation Order;

(p) shorten or extend, for cause, the time fixed for performance of any act or thing under the Plan or the Confirmation Order, on notice or ex parte, as the Bankruptcy Court shall determine to be appropriate;

(q) enter any order, including injunctions, necessary to enforce the title, rights and powers of the Reorganized Debtors, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary;

(r) review any action taken or not taken by the Reorganized Debtors;

(s) adjudicate any settlements pursuant to Bankruptcy Rule 9019, if required under the Plan or the Confirmation Order and all other matters contained therein;

(t) enter a Final Decree closing the Chapter 11 Cases or converting these cases to chapter 7 cases; and

(u) enter any orders necessary to effectuate the Confirmation Order and the Plan.

Failure of Bankruptcy Court to Exercise Jurisdiction. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Reorganized Debtors, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XVII
## MISCELLANEOUS PROVISIONS

**A. Substantial Consummation of Plan**. For purposes of any future analysis regarding, inter alia, appellate issues, modification of Plan, administration of the Plan and jurisdiction of the Bankruptcy Court, this Plan shall be deemed substantially consummated upon the completion of the initial Distribution required under the Plan to be made on the Effective Date.

**B. Confirmation Order Controls**. To the extent the Disclosure Statement or any agreement entered into between or among the Debtors, the Reorganized Debtors or any third party, is inconsistent with the Plan, the Plan shall control. To the extent that the Plan, the Disclosure Statement or any agreement entered into between or among the Debtors, the Reorganized Debtors or any third party, is inconsistent with the Confirmation Order, the Confirmation Order shall control.

**C. Section 1125(e) Good Faith Compliance**. Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Debtors have acted in "good faith" under Sections 1125(e) and 1129(a)(3) of the Bankruptcy Code.

**D. Headings**. The headings of the Articles, paragraphs and subparagraphs herein are inserted for convenience only and shall not affect the interpretation of the Plan.

**E. Successors and Assigns**. This Plan and all of the provisions thereof shall be binding upon and inure to the benefit of the Debtors, all creditors and interested parties and their respective heirs, executors, administrators, successors and assigns.

**F. Notices**. Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid.

**G. Binding Effect of Plan**. The provisions of this Plan and Confirmation Order shall be binding upon and inure to the benefit of the Debtors, the Estates, any holder of any Claim or Interest treated herein or any Person named or referred to in this Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agent, officers

and directors, and, as to the binding effect, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by this Plan or Confirmation Order.

**H. Final Order**. Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors or, after the Effective Date, the Reorganized Debtors upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

**I. Business Days**. If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**J. Severability of Plan Provisions**. If prior to Confirmation any term or provision of this Plan that does not govern on appeal the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**K. Governing Law**. EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THIS PLAN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THIS PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THIS PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF FLORIDA OR THE UNITED STATES OF AMERICA.

**L. Filing of Additional Documents**. On or before substantial consummation of this Plan, the Proponents shall issue, execute, deliver, and file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of this Plan, including by making such supplemental disclosures or notices as any proponent deems useful.

**M. Time**. Unless otherwise specified herein, in computing any period of time prescribed or allowed by this Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of the period so computed shall be included,

unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

**N.** **No Attorney Fees**. No attorney fees will be paid by the Debtors with respect to any Claim or Interest, except as expressly specified herein or allowed by a Final Order of the Bankruptcy Court.

**O.** **Preservation of Rights of Setoff**. The Debtors or the Reorganized Debtors, as the case may be, may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have had against the holder of such Claims; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such holder.

**P.** **Defenses with Respect to Unimpaired Claims**. Except as otherwise provided in this Plan, nothing shall affect the rights and legal and equitable defenses of the Debtors with respect to any unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against unimpaired Claims.

**Q.** **No Injunctive Relief**. No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief.

**R.** **No Admissions**. Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

**S.** **Entire Agreement**. This Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. The Reorganized Debtors shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**T.** **Service of Documents**. Any pleading, notice or other document required herein to be served on or delivered to the Debtors shall be sent by both email and first class, certified U.S. mail, postage prepaid as follows:

To the Reorganized Debtors:

Smart Communications Holdings, Inc.
c/o Legal Department
10491 72nd Street
Seminole, FL 33777

With a copy to (which shall not constitute notice):

VENABLE LLP
Attn: Paul J. Battista, Esq. and Eric Jacobs, Esq.
801 Brickell Avenue, Suite 1500
Miami, FL 33131
Telephone: 305.349.2300
Email: pjbattista@venable.com
Email: ejacobs@venable.com

Respectfully submitted this 9th day of October 2026.

**SMART COMMUNICATIONS HOLDING, INC.**
a Florida corporation

By:______________________________
Jonathan D. Logan
Authorized Representative of the Debtors

**SMART COMMUNICATIONS COLLIER, INC.**
a Florida corporation

By: ______________________________
Jonathan D. Logan
Authorized Representative of the Debtors

**VENABLE LLP**
*Attorneys for Smart Communications Holding, Inc. and Smart Communications Collier, Inc.*

*/s/ Eric D. Jacobs*
Paul J. Battista, Esq.
Florida Bar No. 884162
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Phone: 305.349.2300
Email: pjbattista@Venable.com

- and -

Eric D. Jacobs, Esq.
Florida Bar No. 85992
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Phone: 813.439.3100
Email: ejacobs@Venable.com

# Exhibit A

(Rejected Contracts)

NONE.